KEVIN D. JAMISON (SBN 22105)
kjamison@jec-legal.com
ERIN N. EMPTING (SBN 272130)
eempting@jec-legal.com
JUSTIN F. CRONIN (SBN 260188)
jcronin@jec-legal.com
JAMISON EMPTING CRONIN, LLP
825 East 4th Street, Suite 204
Los Angeles, California 90013
Telephone: (213) 246-2732
Facsimile: (626) 314-1833

Attorneys for Defendant
Paramount Global, f/k/a ViacomCBS Inc.,
f/k/a CBS Corporation, a Delaware
corporation, f/k/a Viacom Inc., successor
by merger to CBS Corporation, a
Pennsylvania corporation, f/k/a
Westinghouse Electric Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT. L. HULTNER and GERALDINE E. HULTNER, <br><br> Plaintiffs, <br><br> vs. <br><br> AIR & LIQUID SYSTEMS CORPORATION (*sued individually and as successor-in-interest to* BUFFALO PUMPS, INC.,) et al., <br><br> Defendants. | Case No: 8:24cv-00409-JLS (DFMx) <br><br> **DEFENDANT PARAMOUNT GLOBAL'S MEMORANDUM OF POINTS IN OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES** <br><br> Hearing Date: May 2, 2025 <br> Hearing Time: 10:30 a.m. <br> Judge: Hon. Josephine L. Staton <br> Location: Courtroom 8A, 8th Floor <br><br> Complaint Filed: February 27, 2024 <br> Pre-Trial Conf.: August 22, 2025 |

# TABLE OF CONTENTS

Page

I.    STATEMENT OF FACTS .................................................................. 1

II.   STANDARDS APPLICABLE TO SUMMARY JUDGMENT
      MOTIONS ........................................................................................ 4

III.  ARGUMENT ..................................................................................... 5

      A.    Westinghouse has raised a genuine issue as to its military
            contractor defense. ................................................................. 5

            (1)   Measured against either *Boyle* or *Yearsley/McKay*,
                  Westinghouse need only show that the Navy reviewed and
                  approved the warnings to be given with its turbines, not that
                  the Navy dictated the content of those warnings or otherwise
                  stripped Westinghouse of any and all discretion. ........................... 5

      B.    The evidence raises a genuine issue as to each prong of
            Westinghouse's proof of its military contractor defense. ........................ 6

            (1)   The undisputed evidence shows that the Navy carefully
                  reviewed all equipment-related warnings to ensure their
                  compliance with the Navy's rules, and Westinghouse need
                  not prove that asbestos warnings were expressly and
                  unilaterally prohibited by the Navy. ................................................. 6

            (2)   The fact of the Navy's approval of Westinghouse's warnings
                  is sufficient to raise a genuine issue as to the second prong
                  of Westinghouse's military contractor defense. ............................ 9

            (3)   At least a genuine issue exists as to the final prong of the
                  military contractor defense test as the Navy knew of
                  asbestos hazards generally and there is no evidence of a

i

## TABLE OF CONTENTS

<u>Page</u>

single asbestos hazard fact that was known to Westinghouse
but not the Navy.................................................................................11

IV.  WESTINGHOUSE HAS RAISED A GENUINE ISSUE AS TO ITS
SOPHISTICATED PURCHASER DEFENSE.....................................12

V.  WESTINGHOUSE HAS RAISED A GENUINE ISSUE AS TO ITS
SUPERSEDING CAUSE DEFENSE. ...............................................15

VI.  CONCLUSION ........................................................................18

VII.  L.R. 11-6.2 WORD COUNT CERTIFICATE OF COMPLIANCE..................19

# TABLE OF AUTHORITIES

<u>Page</u>

**FEDERAL CASES**

*Air & Liquid Sys. Corp. v. DeVries*,
  586 U.S. 446 (2019)................................................................... 7, 13

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................ 5

*Anguiano v. E.I. Du Pont de Nemours & Co.*,
  44 F.3d 806 (9th Cir. 1995) .............................................................. 12

*Barnett v. United States*,
  650 F. Supp. 3d 412 (D.S.C. 2023) .................................................. 15

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988)................................................................ 5, 6, 7, 9

*Bryant v. Hercules Inc.*,
  325 F. Supp. 241 (W.D. Ky. 1970) .................................................. 14

*Butterfield v. Gen. Elec. Co.*,
  2023 WL 8697701 (N.D. Cal. Dec. 15, 2023) ................................. 11

*Cabalce v. Thomas E. Blanchard & Assocs.*,
  797 F.3d 720 (9th Cir. 2019) .............................................................. 6

*Cabasug v. Crane Co.*,
  988 F. Supp. 2d 1216 (D. Haw. 2013)......................................... 13, 15

*Celotex v. Catrett*,
  477 U.S. 317 (1986)............................................................................ 4

*Commardelle v. Pennsylvania Gen. Ins. Co.*,
  2014 WL 1117969 (E.D. La. Mar. 28, 2014) .................................. 11

*Conti v. Ford Motor Co.*,
  743 F.2d 195 (3d Cir. 1984) ............................................................. 17

*David Hill Develop., LLC v. City of Forest Grove*,
  688 F. Supp. 2d 1193 (D. Ore. 2010) .............................................. 1, 5

*Davis v. Avondale Indus., Inc.*,
  975 F.2d 169 (5th Cir. 1992) ....................................................... 14, 16

*Elorreaga v. ViacomCBS Inc.*,
  2024 WL 4379732 (9th Cir. Oct. 3, 2024) ................................... 5, 6, 7

*Exxon Co. U.S.A. v. Sofec, Inc.*,
  517 U.S. 830 (1996)........................................................................... 15

*F.D.I.C. v. Giammettei*,
  34 F.3d 51 (2d Cir. 1994) ................................................................... 4

*Fairbank v. Wunderman Cato Johnson*,
  212 F.3d 528 (9th Cir. 2000) ........................................................... 4, 5

*Ferguson v. Lorillard Tobacco Co.*,
  475 F. Supp. 2d 725 (N.D. Ohio 2007) .............................................. 8

*Gay v. A.O. Smith Corp.*,
  2024 WL 2558735 (3d Cir. May 24, 2024) ...................................... 11

iii

# TABLE OF AUTHORITIES

Page

*Getz v. Boeing Co.*,
654 F.3d 852 (9th Cir. 2011) ................................................. 8, 9, 11

*Guarascio v. Drake Assocs.*,
582 F. Supp. 2d 459 (S.D.N.Y. 2008) ................................................. 13

*Haltiwanger v. Unisys Corp.*,
949 F. Supp. 898 (D.D.C. 1996) ................................................. 8

*Hilster v. Air & Liquid Sys. Corp.*,
2022 WL 1720321 (W.D. Pa. May 27, 2022) ................................................. 11

*Housand v. Bra-Con Indus.*,
751 F. Supp. 541 (D. Md. 1990) ................................................. 14

*In re Agent Orange Prod. Liab. Litig.*,
373 F. Supp. 2d 7 (E.D.N.Y. 2005) ................................................. 6

*In re Hawaii Fed. Asbestos Cases*,
960 F.2d 806 (9th Cir. 1992) ................................................. 16

*In re M/V Flaminia*,
339 F. Supp. 3d 185 (S.D.N.Y. 2018) ................................................. 15, 17

*In re Related Asbestos Cases*,
543 F. Supp. 1142 (N.D. Cal. 1982) ................................................. 13, 15

*Johnson v. Resources for Human Dev.*,
878 F. Supp. 35 (E.D. Pa. 1995) ................................................. 2

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ................................................. 7, 8, 11

*Lipkin v. Norwegian Cruise Line Ltd.*,
93 F. Supp. 3d 1311 (S.D. Fla. 2015) ................................................. 17

*Lockett v. Gen. Elec. Co.*,
376 F. Supp. 1201 (E.D. Pa. 1974) ................................................. 14

*Mack v. Gen. Elec. Co.*,
896 F. Supp. 2d 333 (E.D. Pa. 2012) ................................................. 13

*McAboy v. IMO Indus.*,
2005 WL 2898047 (W.D. Wash. Oct. 27, 2005) ................................................. 9

*McKay v. Rockwell International Corp.*,
704 F.2d 444 (9th Cir. 1983) ................................................. passim

*Nesbiet v. Gen. Elec. Co.*,
399 F. Supp. 2d 205 (S.D.N.Y. 2005) ................................................. 10

*Nwauzor v. GEO Group, Inc.*,
127 F.4th 750 (9th Cir. 2025) ................................................. 6

*O'Connell v. Foster Wheeler Energy Corp.*,
544 F. Supp. 2d 51 (D. Mass. 2008) ................................................. 8

*Petree v. Victor Fluid Power, Inc.*,
831 F.2d 1191 (3d Cir. 1987) ................................................. 17

*Phelps v. CBS Corp.*,

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

2021 WL 4226037 (S.D.N.Y. Sept. 16, 2021) ....................................... 14

*Powell v. Union Pac. R.R. Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ............................................ 4

*Rodriguez v. Torres*,
  2015 WL 1138256 (D.P.R. Mar. 13, 2015) ................................ 17, 18

*Sherin v. Crane Houdaille, Inc.*,
  47 F. Supp. 3d 280 (D. Md. 2014) ................................................ 17

*Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*,
  447 F.3d 360 (5th Cir. 2006) ......................................................... 16

*Tamura v. United States*,
  734 F.2d 470 (9th Cir. 1984) ........................................................... 1

*Tate v. Boeing Helicopters*
  140 F.3d 654 (6th Cir. 1998) ..................................................... 8, 10

*Tate v. Boeing Helicopters*,
  55 F.3d 1150 (6th Cir. 1995) ......................................................... 7

*Tate v. Boeing Helicopters*,
  921 F. Supp. 1562 (W.D. Ky. 1996) ............................................... 9

*Twinam v. Dow Chem Co.*,
  517 F.3d 76 (2d Cir. 2008) ........................................................... 11

*United States v. Heart Solution, PC*,
  923 F.3d 308 (3d Cir. 2019) ........................................................... 2

*Warford v. Indus. Power Sys.*,
  2008 WL 4642638 (D.N.H. 2008) ............................................... 15

*Warrington v. 3M Co.*,
  2023 WL 5239605 (E.D. Pa. Aug. 15, 2023) ................................. 2

*Willis v. BW IP Int'l*,
  811 F. Supp. 2d 1146 (E.D. Pa. 2011) ......................................... 10

*Yearsley v. W.A. Ross Constr. Co.*,
  309 U.S. 18 (1940) ................................................................. 5, 6, 9

*Yeroshefsky v. Unisys Corp.*,
  962 F. Supp. 710 (D. Md. 1997) ..................................................... 8

*Zimmerman v. Baker-Perkins, Inc.*,
  707 F. Supp. 778 (E.D. Pa. 1989) ................................................ 17

**NON-FEDERAL CASES**

*Miller v. United Technologies Corp.*,
  660 A.2d 810 (Conn. 1995) ........................................................... 11

*Phillips v. A-Best Prods. Co.*,
  665 A.2d 1167 (Pa. 1995) ............................................................. 17

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rules of Civil Procedure, Rule 56 ................................... 4, 13

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

**OTHER AUTHORITIES**

Barry A. Lindahl, 3 *Modern Tort Law: Liability and Litigation* § 27.43 (2d ed.) ....... 17

Restatement (Second) of Torts § 388 ........................................................... 13

Restatement (Second) of Torts § 442 ........................................................... 16

Restatement (Third) of Torts, § 18 .............................................................. 17

Schachtman, Nathan A., "Products Liability Law – Lessons from the Military and Industrial Contexts,"
13 J. TORT. L. 303, 322 n. 78 (Oct. 2020) ............................................... 13

Schoenbaum, Thomas J., 1 *Admiralty & Mar. Law* § 5-3, Causation (5th ed.) ........... 15

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Paramount Global ("Westinghouse")[1] opposes Plaintiffs' motion for partial
2    summary judgment [Doc. No. 88]. Plaintiffs allege that Scott L. Hultner ("Mr.
3    Hultner") was injured by asbestos exposure while serving in the United States Navy,
4    including exposure associated with Westinghouse Navy pump-drive turbines which
5    were installed aboard the *U.S.S. Juneau* and Westinghouse Navy nuclear reactor
6    components which were installed within the reactor compartment of the *U.S.S. John*
7    *Adams*. Plaintiffs seek to strike three defenses stated by Westinghouse: a military
8    contractor defense (as it relates to Plaintiffs' failure-to-warn claims); a sophisticated
9    purchaser defense; and a superseding cause defense. Plaintiffs' motion should be
10   denied because the evidence raises at least a genuine issue as to the viability of each of
11   Westinghouse's defenses.

12   **I.    STATEMENT OF FACTS[2]**

13       The Navy's extensive control over the design, manufacture, and supply of
14   Westinghouse's Navy equipment extended to the warnings to be supplied therewith.
15   Both the format and content of such warnings were subject to detailed Navy
16   specifications ("MilSpecs"), with the Navy carefully reviewing all equipment
17   technical manuals, labels, nameplates, *etc* . . . to ensure MilSpec compliance, and
18   approving them despite a lack of asbestos-related warnings and despite the Navy's
19   own knowledge of asbestos hazards. [AUF #82].[3] Westinghouse was precluded from

---

[1] Paramount Global (a Delaware corporation formerly known as ViacomCBS Inc.; as CBS Corporation; and as Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation formerly known as Westinghouse Electric Corporation).

[2] The evidence is viewed in the non-movant's favor at the summary judgment stage. *Tamura v. United States*, 734 F.2d 470, 471-72 (9th Cir. 1984). Thus, in determining whether a genuine issue has been raised as to each of Westinghouse's contested defenses, the evidence must be viewed in the light most favorable to Westinghouse, resolving all disputes in its favor. *David Hill Dev., LLC v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1224 (D. Ore. 2010).

[3] "AUF" refers to the additional uncontroverted material facts and evidence in support thereof submitted by Westinghouse in the Opposition Statement of Uncontroverted Facts concurrently filed herewith. Per this Court's Standing Civil Order, the AUFs are sequentially numbered picking up after the moving party's last claimed uncontroverted fact.

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

providing any warning with its Navy equipment outside the scope of this Navy review and approval process. [AUF #83].

Likewise, the Navy exercised sole and exclusive autonomy over the method and manner of the work (including any asbestos-related work) performed in Navy shipyards and over the safety-related rules and procedures to be followed in Navy shipyards or aboard Navy ships. [AUF #84]. Conversely, Westinghouse had no authority to control or dictate the work practices of Navy personnel. [AUF #85].

As recently admitted on deposition by Plaintiffs' Navy expert, Captain Arnold Moore, while the Navy's MilSpecs and related rules broadly called for warnings of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings. [AUF #86]. Instead, on the only known occasion when the Navy considered the question, it determined that an asbestos warning was *not* called for by the very same MilSpecs and rules on which Plaintiffs now rely. [AUF #87].[4]

It is undisputed that the Navy's extensive knowledge of health hazards associated with excessive asbestos exposure dates back to the 1920s and that, by the 1940s, the Navy had become a "leader in the field" of asbestos safety, adopting measures to prevent its personnel from incurring asbestos-related injuries as early as 1941. [AUF #88]. In particular, by the time of Mr. Hultner's alleged asbestos exposure, the Navy had implemented a comprehensive, state-of-the-art, safety program setting out detailed procedures for the proper handling of asbestos-containing insulation. [AUF #89]. The record is devoid of evidence that Westinghouse knew a

---

[4] Despite the frequency with which Captain Moore has offered sworn testimony as to the relevant issues in this case, Plaintiffs wholly ignore that testimony and exclusively rely, instead, on Captain Moore's unsworn expert report. Plaintiffs' motion is thus fatally flawed as an unsworn statement that has not been made under penalty of perjury is incompetent evidence for summary judgment purposes. *See, e.g.*, *United States v. Heart Solution, PC*, 923 F.3d 308, 315–16 (3d Cir. 2019); *Warrington v. 3M Co.*, 2023 WL 5239605 at *6 (E.D. Pa. Aug. 15, 2023); *Johnson v. Resources for Human Dev.*, 878 F. Supp. 35, 39 n.5 (E.D. Pa. 1995). Captain Moore's report should thus be disregarded in this Court's consideration of Plaintiffs' motion for partial summary judgment.

1    single asbestos hazard-related fact that was not also known to the Navy as of the

2    period of Mr. Hultner's Navy service. [AUF #90].

3            Rather than keeping its sophisticated understanding of asbestos hazards secret,

4    the Navy, beginning in the 1940s and continuing through the period of Mr. Hultner's

5    alleged exposure, broadly publicized both the fact of its knowledge of asbestos

6    hazards and the fact of its implementation of various measures designed to ensure that

7    any asbestos exposures on the part of Navy personnel remained below the then-

8    applicable Threshold Limit Value ("TLV")—*i.e.*, that level of exposure below which

9    there was believed to be no appreciable risk of harm. [AUF #91]. Particularly as many

10   of the safety measures included in the Navy's well-publicized asbestos safety program

11   had become legal requirements for all employers by the time of Mr. Hultner's alleged

12   exposure, it was reasonable for third parties to expect the Navy to rigorously enforce

13   that program, protecting its own personnel from hazardous levels of asbestos

14   exposure. [AUF #92]. Conversely, to the extent that the Navy sometimes failed to

15   fully enforce these asbestos-related safety measures in its shipyards and aboard its

16   ships, it was much less forthcoming with that information, as exemplified by its

17   rejection of a Bureau of Labor Standards offer to inspect Navy shipyards in 1941—a

18   rejection based in part on the Navy's awareness that it was not fully implementing its

19   asbestos safety program and its fear that drawing further attention to possible asbestos

20   hazards might cause labor unrest, upsetting the war effort. [AUF #93].

21           Apart from any constructive notice Westinghouse had of the Navy's asbestos

22   safety program as of the 1970s due to the publicizing of that program, Westinghouse

23   had actual knowledge of the Navy's sophisticated appreciation of asbestos hazards

24   and of its implementation of extensive measures to protect its personnel from those

25   hazards due to its work assisting the Navy and the United States Atomic Energy

26   Commission in the management of a nuclear propulsion laboratory and training

27   station known as the Naval Reactors Facility ("NRF"). [AUF #94]. More specifically,

28   Westinghouse and the Navy jointly enforced various aspects of the Navy's asbestos

3

safety program at the NRF beginning in the late 1950s, including: segregating the dustiest uses of asbestos insulation to the facility's insulation shops rather than performing such work "shipboard" (*i.e.*, in the facility's propulsion plant prototypes); attempting to limit access to the insulation shops to essential personnel; and using drop cloths and vacuum cleaners to dispose of any dust or debris created by asbestos insulation work that had to be performed in the prototypes. [AUF #95]. Notably, no excessive asbestos dust exposures were ever measured at the NRF; rather, the dust monitoring jointly performed at the NRF by the Navy and Westinghouse recorded asbestos dust concentrations below the then-existing TLV and, thus, below a level then believed needed to pose a risk of harm. [AUF #96].

## II.    <u>STANDARDS APPLICABLE TO SUMMARY JUDGMENT MOTIONS</u>

Under Federal Rules of Civil Procedure, Rule 56(c), a party is entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). Thus, a defendant seeking a summary judgment based on a failure of an essential element of proof as to which the plaintiff would bear the burden at trial can satisfy its initial burden either by offering evidence disproving an essential material fact or by showing that, despite an opportunity for discovery, the plaintiff lacks sufficient evidence to raise a genuine issue as to the fact in question. *Fairbank,* 212 F.3d at 531. A similar standard applies where, as here, a plaintiff seeks to strike a defendant's affirmative defense. In such a case, the plaintiff bears the initial burden of showing a lack of evidence as to one or more elements of the defense. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994); *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 962 (E.D. Cal. 2012).

Once the movant has satisfied its initial burden of production, the burden shifts to the non-movant to go beyond the pleadings and to produce admissible evidence

1  sufficient to raise a genuine issue as to the challenged claim or defense. *Anderson v.*

2  *Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *Fairbank,* 212 F.3d at 531. As

3  noted above, any assessment of whether Westinghouse has met that burden here must

4  be made viewing the evidence, and all inferences arising therefrom, in the light most

5  favorable to Westinghouse, resolving all factual disputes in its favor. *David Hill Dev.,*

6  *LLC*, 688 F. Supp. 2d at 1224.

7  **III.    ARGUMENT**

8      **A.    Westinghouse has raised a genuine issue as to its military contractor**

9         **defense.**

10         **(1)    Measured against either *Boyle* or *Yearsley/McKay*,**

11             **Westinghouse need only show that the Navy reviewed and**

12             **approved the warnings to be given with its turbines, not that**

13             **the Navy dictated the content of those warnings or otherwise**

14             **stripped Westinghouse of any and all discretion.**

15      First, relying on an unpublished memorandum, *Elorreaga v. ViacomCBS Inc.*,

16  2024 WL 4379732 (9th Cir. Oct. 3, 2024), Plaintiffs argue that *Boyle v. United*

17  *Technologies. Corp.*, 487 U.S. 500 (1988) does not apply to federal law-based claims

18  (like the maritime law claims here), and that the viability of Westinghouse's immunity

19  defense turns, instead, on *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940).

20  [Doc. No. 88, pp. 17–18 of 26]. Springing from that proposition, Plaintiffs urge that

21  *Yearsley* immunity, unlike *Boyle* immunity, only applies where all aspects of the work

22  were dictated by the government and, thus, does not apply to contractors like

23  Westinghouse who closely collaborated with the Navy, both as to the design of its

24  Navy equipment and as to the form and content of any warnings to be given therewith.

25  [Id., p. 18 of 26]. Plaintiffs' *Elorreaga*-based argument falters at both steps.

26      While *Elorreaga* did endorse drawing a sharp distinction between *Boyle* and

27  *Yearsley* (casting *Boyle* solely in terms of state law preemption rather than derivative

28  sovereign immunity and suggesting that *Yearsley*, not *Boyle*, controls the application

of the military contractor defense to federal law-based claims), such a cramped reading of *Boyle* is at odds with the majority-rule understanding of that case that *Boyle*-based immunity, where otherwise proper, extends to "all domestic state ***and federal*** substantive law claims." *In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 16, 44–45 (E.D.N.Y. 2005) (emphasis added), *aff'd*, 517 F.3d 104 (2d Cir. 2008), *cert. denied*, 555 U.S. 1218 (2009). It is thus unsurprising that Ninth Circuit precedent continues to treat both *Boyle* and *Yearsley* as defining the qualified derivative sovereign immunity enjoyed by different types of government contractors in different contexts without reference to the state/federal law dichotomy proposed by *Elorreaga*. *See Nwauzor v. GEO Group, Inc.*, 127 F. 4th 750, 770 (9th Cir. 2025).

Regardless, any purported distinction between *Yearsley* and *Boyle* is without a difference here. Given the interpretation afforded *Yearsley* in *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983), the standards for immunity under either line of authority are indistinguishable in this Circuit, at least in the specific context of claims involving military equipment suppliers, with *Boyle* expressly adopting the *Yearsley*-based test delineated in *McKay*. *Compare Boyle*, 487 U.S. at 512 *with McKay*, 704 F.2d at 451. Put simply, while government "dictation" or "prohibition" may remain the standard for *Yearsley*-based immunity in other contexts, the binding authority of *McKay* dictates a more lenient "review and approval" standard as to claims brought against military equipment suppliers. *McKay*, 704 F.2d at 450–51; *cf. Cabalce v. Thomas E. Blanchard & Assocs.*, 797 F.3d 720, 731–32 (9th Cir. 2019) (limiting the use of this broader immunity standard to claims brought against military equipment suppliers and, accordingly, assessing the *Yearsley* immunity of a non-military contractor under the narrower, "lack of discretion" or "dictation" standard).

**B.    The evidence raises a genuine issue as to each prong of Westinghouse's proof of its military contractor defense.**

**(1)    The undisputed evidence shows that the Navy carefully**

**reviewed all equipment-related warnings to ensure their compliance with the Navy's rules, and Westinghouse need not prove that asbestos warnings were expressly and unilaterally prohibited by the Navy.**

Perhaps as an artifact of their misplaced reliance on *Elorreaga*, Plaintiffs suggest that Westinghouse cannot state a military contractor defense to their failure-to-warn claims because it cannot show that the Navy expressly prohibited asbestos warnings from being given or even proposed by its equipment suppliers. [Doc. No. 88, pp. 18–22 of 26]. Again, that argument falls flat.

Consistent with the intentional broadening of the immunity standard worked by *McKay* in the military equipment context, military contractor defense-based immunity extends to failure-to-warn claims where: 1) the government "exercised its discretion and approved the warnings, if any" to be given with the equipment; 2) the defendant furnished warnings conforming to the specifications approved by the government; and 3) the contractor warned the government of any hazards of which it, but not the government, was aware. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1123 (9th Cir.), *cert. denied*, 574 U.S. 934 (2014).[5]

As stressed in *Tate,* 55 F.3d at 1157:

> ***Government discretion is required, not dictation or prohibition of warnings****. Where a contractor proposes warnings that the government substantively approves, and satisfies the second and third conditions [of the* Boyle

---

[5] An even broader immunity as to failure-to-warn claims is at least arguably called for by *McKay* which, anticipating the second and third prongs of the test for third-party product liability later announced in *Air & Liquid Sys. Corp. v. DeVries*, 586 U.S. 446 (2019), held that, regardless of whether the government exercises any control whatsoever over a military equipment supplier's warnings, there can be no liability for a purported failure to warn unless the defendant had reason to know its product was hazardous and had no reason to believe that product users would be made aware of the hazard. *See McKay*, 704 F.2d at 454. There is, however, no need here to decide whether immunity to failure-to-warn claims under *McKay* is even more expansive than under *Boyle*, as the evidence raises a genuine issue in favor of Westinghouse even under the *Boyle* standard.

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

1
2
3

> analysis], the [government contractor] defense displaces state [warning-related tort] law—***even if the government did not "prohibit" the contractor from proposing more alarming warnings***.

4    (Emphasis added).

5    Or, as later explained in *Tate v. Boeing Helicopters* ("*Tate II*"), 140 F.3d 654,

6    658 (6th Cir. 1998):

7
8
9
10
11
12

> In the failure to warn context, discretion occurs where the government is both knowledgeable and concerned about the contents of the proposed warnings before granting its approval [of the product]. The government is sufficiently knowledgeable when it has ***a complete enough understanding of the proposed warnings to reasonably recognize which hazards have been thoroughly addressed and which have not***. . . . Where government knowledge and concern are exhibited ***through the review process***, it may be fairly said that the government has decided which warnings should and should not be provided to end users.

13    (Emphasis added). *See also Leite*, 749 F.3d at 1123. These principles are particularly

14    apt where, as here, Westinghouse could not provide any warnings outside the scope of

15    the Navy's review and approval process. *Ferguson v. Lorillard Tobacco Co.*, 475 F.

16    Supp. 2d 725, 730 (N.D. Ohio 2007); *Yeroshefsky v. Unisys Corp.*, 962 F. Supp. 710,

17    721 (D. Md. 1997); *Haltiwanger v. Unisys Corp.,* 949 F. Supp. 898, 906–07 (D.D.C.

18    1996).

19    Thus, the fact that a specific warning was not expressly precluded by the Navy

20    will not take a failure-to-warn claim outside the military contractor defense where the

21    Navy carefully reviewed and approved the warnings provided by the contractor and

22    was, itself, generally aware of the potential hazard. *Leite*, 749 F.3d at 1123; *Getz v.*

23    *Boeing Co.*, 654 F.3d 852, 867 (9th Cir. 2011), *cert. denied*, 565 U.S. 1202 (2012);

24    *see also*, *e.g.*, *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 55 (D.

25    Mass. 2008) (where the government provided reasonably precise specifications as to

26    the contractor's communication of product-related warnings, the contractor "need not

27    show that the government prohibited it from supplementing the [specified] warnings

28    with warnings of its own"); *McAboy v. IMO Indus.*, 2005 WL 2898047 at *4 (W.D.

8

Wash. Oct. 27, 2005) (rejecting the notion that the Navy must have specifically forbidden an asbestos warning for the government contractor defense to apply, holding instead that "the crux of the issue is whether the government provided any instruction or specification as to any warnings or labels that the federal contractor could put on its product"). Likewise, Westinghouse need not show that it proposed an asbestos warning to the Navy, only to have that proposal rejected. *See*, *e.g.*, *Tate v. Boeing Helicopters*, 921 F. Supp. 1562, 1566 (W.D. Ky. 1996), *aff'd*, 140 F.3d 654 (6th Cir. 1998).

As summarized above, the evidence here shows that the Navy imposed reasonably precise specifications on the form and content of Navy equipment-related warnings, that it carefully reviewed the warnings drafted by Westinghouse, and that it approved them as MilSpec compliant. [AUF ##82–83]. That evidence raises at least a genuine issue as to Westinghouse's satisfaction of the first prong of its military contractor defense.

**(2)    The fact of the Navy's approval of Westinghouse's warnings is sufficient to raise a genuine issue as to the second prong of Westinghouse's military contractor defense.**

Evidence that the Navy accepted and used Westinghouse's equipment is, itself, proof that the equipment and the associated warnings conformed to the relevant specifications. *See*, *e.g.*, *Getz*, 654 F.3d at 864. Plaintiffs nonetheless argue that Westinghouse could have or should have read the Navy's MilSpecs calling for warnings of "special hazards" as implicitly requiring asbestos warnings, and that its failure to supply such warnings shows non-conformance. [Doc. No. 88, pp. 12–22 of 26]. Again, that argument cannot be squared with the broad, "review and approval," parameters of the military contractor defense under either *Boyle* or *Yearsley/McKay*.

Military equipment cannot be held to deviate from government specifications regarding warnings where, as here, the only argument for such a deviation involves a non-asbestos-specific "catch-all" specification vaguely calling for warnings of all

9

"special hazards" associated with the equipment and where, as here, the government carefully reviewed the warnings supplied by the defendant and approved them despite the absence of an asbestos warning. *Cf. Tate II*, 140 F.3d at 659; *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 208–09 (S.D.N.Y. 2005). In essence, Plaintiffs' argument seeks to wrongly substitute current-day speculation as to how certain historical Navy rules **could have** or **should have** been interpreted in decades past for Westinghouse's undisputed evidence: 1) that the Navy, in fact, read its own rules during the relevant time period as **not** calling for an asbestos warning; and 2) that the Navy reviewed Westinghouse's equipment-related warnings and approved them as being MilSpec-compliant despite a lack of asbestos warnings. As observed by the *Tate II* court, allowing immunity to turn on such speculation rather than on the historical fact of the Navy's actual conduct would essentially substitute the Court's (or Plaintiffs') hindsight interpretation of the relevant rules for the interpretation actually, though implicitly, given those same rules by the Navy in its review and approval process—an approach squarely at odds with the military contractor defense as "[t]he military's interpretation of its own specifications is the very type of discretionary function that the government contractor defense is meant to insulate." *Tate II*, 140 F.3d at 659.

In short, the evidence suffices to raise at least a genuine issue that the equipment-related warnings supplied by Westinghouse conformed to the Navy's rules and specifications. Such evidence satisfies the second prong of the test for military contractor defense-based immunity.[6]

---

[6] Plaintiffs' reliance on *Willis v. BW IP Int'l*, 811 F. Supp. 2d 1146 (E.D. Pa. 2011) and its progeny [Doc. No. 88, pp. 21–22 of 26] is misplaced. First, it ignores the contrast in the evidence presented in *Willis* and here, with the *Willis* plaintiffs offering expert opinion testimony that asbestos warnings were specifically required by the Navy (*Willis*, 811 F. Supp. 2d at 1152), but with Plaintiffs' Navy expert in this case candidly admitting under oath upon deposition not only that asbestos warnings were not clearly required by the Navy's rules, but that—on the one occasion when it considered the question—the Navy determined that asbestos warnings were **not** needed under those rules. [AUF ##86–87]. More importantly, the *Willis* court, even on the record before it, held that a genuine issue remained as to the viability of Westinghouse's immunity defense—a holding at odds with the relief sought by Plaintiffs here. *Willis*, 811 F. Supp. 2d at 1156–57.

10

**(3)**    **At least a genuine issue exists as to the final prong of the
military contractor defense test as the Navy knew of asbestos
hazards generally and there is no evidence of a single asbestos
hazard fact that was known to Westinghouse but not the Navy.**

As summarized in *Miller v. United Technologies Corp.*, 660 A.2d 810, 835
(Conn. 1995), a military product supplier need warn of a product-related hazard "only
when the supplier's knowledge of the danger or defect is superior to that of the
government." Put differently, where the evidence, rather than clearly showing superior
knowledge on the part of the supplier, tends to show basic parity of knowledge on the
government's part, the immunity test has been met. *Getz*, 654 F.3d at 865–66; *Twinam
v. Dow Chem Co.*, 517 F.3d 76, 101–02 (2d Cir. 2008), *cert. denied*, 555 U.S. 1218
(2009); *Commardelle v. Pennsylvania Gen. Ins. Co.*, 2014 WL 1117969 at *6 (E.D.
La. Mar. 28, 2014). Here, Westinghouse has stated a viable immunity defense as
"there is evidence . . . that the [Navy] knew about [asbestos hazards] and there is no
evidence that [Westinghouse] withheld any additional information about the
problem." *Hilster v. Air & Liquid Sys. Corp.*, 2022 WL 1720321 at *7 (W.D. Pa. May
27, 2022); *see also*, *e.g.*, *Gay v. A.O. Smith Corp.*, 2024 WL 2558735 at *3 (3d Cir.
May 24, 2024) [unreported op.]; *Butterfield v. Gen. Elec. Co.*, 2023 WL 8697701 at
*7 (N.D. Cal. Dec. 15, 2023).[7]

Plaintiffs nonetheless seem to argue as to this prong of the immunity analysis

---

[7] The sufficiency of Westinghouse's evidence in this regard is shown by *Leite*,
749 F.3d at 1124, where the Ninth Circuit held that practically identical evidence of
the Navy's asbestos hazard knowledge sufficed as *prima facie* proof of the third prong
of the immunity analysis, shifting the burden to the plaintiffs to tender evidence that
the defendant had known some specific asbestos hazard fact that was unknown to the
Navy. While Plaintiffs may argue that the *Leite* court was assessing the validity of a
28 U.S.C. § 1442(a)(1)-based removal and, thus, only needed to determine whether
the immunity defense was colorable, that is a distinction without a difference here. As
the *Leite* plaintiffs had brought a factual challenge to the removal, the defendant was
required to support its defense with "competent proof," with the *Leite* court stressing
that the sufficiency of that proof was to be assessed "***under the same evidentiary
standard that governs in the summary judgment context***." *Id.* at 1121–22 (emphasis
added).

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   that, regardless of the Navy's knowledge of hazards associated with the use of

2   asbestos *insulation*, it did not consider asbestos *gaskets and packing* dangerous.

3   [Doc. No. 88, p. 22 of 26]. While true, even if that distinction was somehow relevant

4   to Plaintiffs' claims against Westinghouse,[8] it is a distinction without a difference as

5   Westinghouse's evidence shows that, through and including the period of Mr.

6   Hultner's Navy service, neither the Navy *nor Westinghouse* had reason to believe that

7   the relatively *de minimis* amount of asbestos dust created by the shipboard use of such

8   products was hazardous. [AUF #99]. While such evidence may certainly support a

9   finding that neither Westinghouse nor the Navy would have had a duty to warn Mr.

10  Hultner about then-unknown hazards specifically associated with the use of insulation

11  gaskets and packing materials (*compare Anguiano v. E.I. Du Pont de Nemours & Co.*,

12  44 F.3d 806, 812 (9th Cir. 1995), it does not reflect a lack of parity of asbestos hazard

13  knowledge between Westinghouse and the Navy. Accordingly, and given the lack of

14  evidence of a single specific asbestos hazard fact that was known to Westinghouse but

15  not the Navy through the time of Mr. Hultner's alleged exposure, at least a genuine

16  issue has been raised as to the third prong of Westinghouse's immunity defense.

17  **IV.  <u>WESTINGHOUSE HAS RAISED A GENUINE ISSUE AS TO ITS</u>**

18  **<u>SOPHISTICATED PURCHASER DEFENSE</u>.**

19

20      [8] This distinction is, in fact, meaningless as to Westinghouse as Mr. Hultner
21  never experienced any asbestos exposure—gasket/packing-related, insulation-related,
    or otherwise—involving Westinghouse equipment. More specifically, while
22  Westinghouse supplied certain pump-drive turbines that were installed aboard the
    *Juneau*, no work was performed on this equipment in Mr. Hultner's presence during
23  his brief service on that ship. [AUF #97]. Meanwhile, as to Westinghouse reactor
    equipment aboard the *John Adams*, Mr. Hultner never participated in any hands-on
24  work of that equipment, no asbestos associated with that equipment would have been
    disturbed in Mr. Hultner's presence, and Mr. Hultner wore a respirator whenever he
25  was inside the reactor compartment which precluded his exposure to any dust,
    asbestos-containing or otherwise. [AUF #98]. Finally, while Mr. Hultner allegedly
26  performed gasket and/or packing-related work on a "Westinghouse" compressor on
    the *John Adams*, Plaintiffs' own evidence establishes that this compressor was
27  manufactured by the ***Westinghouse Air Brake Company***, a corporate entity separate
    and apart from the Westinghouse Electric Corporation, for whose products and
28  activities Paramount Global has no vicarious liability as a successor or otherwise.
    [AUF #99].

1      There is no duty under maritime law to warn of a product hazard that is, or

2  reasonably should be, known to its user. *See, e.g., Cabasug v. Crane Co.*, 988 F. Supp.

3  2d 1216, 1220–21 (D. Haw. 2013). As a logical extension of this principle, most

4  courts applying maritime law, including the Ninth Circuit, have recognized the

5  "sophisticated purchaser defense," holding that a manufacturer of an injury-causing

6  product is excused of its duty to warn an end user where its product was supplied to a

7  party with actual or constructive knowledge of its hazards, at least where the product

8  supplier had reason to rely on the intermediary to protect end users, itself. *See, e.g.,*

9  *McKay*, 704 F.2d at 454 (holding that a Navy aircraft manufacturer had no duty to

10  warn Navy sailors of hazards because there was no reason for it to believe that the

11  Navy, itself, was unaware of the hazard); *Guarascio v. Drake Assocs.*, 582 F. Supp. 2d

12  459, 465–66 (S.D.N.Y. 2008) (a supplier of shipboard equipment did not owe a duty

13  to warn a seaman where the vessel owner-employer knew or should have known of

14  the hazard); *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1151 (N.D. Cal. 1982).[9]

15      Here, Westinghouse has not just shown that the Navy knew of asbestos hazards;

16  its evidence shows that it had contemporaneous actual knowledge of the Navy's

17  asbestos sophistication. [AUF ##91–92, 94–96]. That evidence, especially when

18  viewed in Westinghouse's favor as required by Rule 56, further tends to show that

19

20  _____

21      [9] As noted by Plaintiffs, a different conclusion was reached in *Mack v. Gen.
Elec. Co.*, 896 F. Supp. 2d 333, 341 (E.D. Pa. 2012). As noted above, however, most
courts applying maritime law have recognized the sophisticated purchaser defense,

22  while sometimes quibbling as to its precise parameters. *Compare Cabasug*, 988 F.
Supp. 2d at 1219, 1228 (invoking comment n to § 388 of the Restatement (Second) of

23  Torts to require a showing of the manufacturer's contemporary knowledge of the
intermediary's sophistication coupled with some reasonable basis to believe the

24  intermediary would protect end users); *Guarascio*, 582 F. Supp. 2d at 465–66
(allowing a sophisticated purchaser defense based solely on a showing of the

25  intermediary's knowledge of the hazard). Of note, the inherent conflict between *Mack*
and § 388 of the Restatement (Second) of Torts has led at least one commentator to

26  conclude that *Mack* has been overruled *sub silentio* by *Air & Liquid Sys. Corp. v.
DeVries*, 586 U.S. 446 (2019), given the Supreme Court's invocation of § 388 in

27  shaping the "no reason to believe" prong of its test for third-party product liability on
the part of naval equipment suppliers. Schachtman, Nathan A., "Products Liability

28  Law – Lessons from the Military and Industrial Contexts," 13 J. TORT. L. 303, 322 n.
78 (Oct. 2020).

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Westinghouse had both constructive and actual knowledge of facts giving rise to a

2   reasonable basis to rely on the Navy to protect its personnel from harmful levels of

3   asbestos exposure, given both the Navy's broad, deliberate, publicizing of its

4   extensive asbestos safety program and Westinghouse's first-hand experience at the

5   NRF where the Navy's asbestos safety measures were found to be effective in keeping

6   asbestos exposures involving Navy propulsion equipment below a level then believed

7   needed to cause harm. [Id.]. Such evidence creates at least a genuine issue that

8   Westinghouse reasonably relied on the Navy to protect Mr. Hultner and his fellow

9   Navy sailors from asbestos hazards, excusing Westinghouse of any duty to warn. *Cf.*

10  *Davis v. Avondale Indus., Inc.*, 975 F.2d 169, 173–74 (5th Cir. 1992) (a manufacturer

11  had reason to believe a shipyard would protect its workers in their use of the

12  manufacturer's product as it was publicly known that the shipyard knew of the hazard

13  and had implemented "an extensive workplace safety program" to protect its

14  personnel); *see also Housand v. Bra-Con Indus.*, 751 F. Supp. 541, 544 (D. Md.

15  1990); *Lockett v. Gen. Elec. Co.*, 376 F. Supp. 1201, 1209–10, 1212 (E.D. Pa.

16  1974).[10, 11]

17

18      [10] Given the Navy's repeated public pledges that it was protecting its personnel
     from excessive asbestos exposure (as well as Westinghouse's first-hand knowledge
19   that such measures were, in fact, being taken at the one site at which Westinghouse
     shared in the Navy's safety role), that the Navy allegedly failed to live up to its public
20   assurances and policies relative to Mr. Hultner, specifically, is immaterial to the issue
     of Westinghouse's duty to warn. *See Phelps v. CBS Corp.*, 2021 WL 4226037 at *7
21   (S.D.N.Y. Sept. 16, 2021); *cf. Bryant v. Hercules Inc.*, 325 F. Supp. 241, 247–48
     (W.D. Ky. 1970) (a dynamite manufacturer reasonably relied on a mining company to
22   comply with its known safety policies and the reasonableness of this reliance was not
     diminished by evidence that the mining company did not, in fact, follow its own
23   safety rules, especially as it took steps to keep that latter fact from being discovered by
     third parties).
24      [11] Plaintiffs incorrectly suggest that, even if a manufacturer can otherwise show
     that it reasonably relied on an intermediary to protect end users, it still cannot state a
25   sophisticated purchaser defense unless it personally warned the intermediary of the
     hazard. [Doc. No. 88, pp. 7 and 20 of 26]. While any warnings given by the
26   manufacturer to the intermediary are relevant in assessing the reasonableness of the
     defendant's reliance (in that they could tend to show both the intermediary's
27   sophistication and the manufacturer's contemporaneous knowledge of that fact), the
     relevant question is not whether the manufacturer warned the defendant but, rather,
28   whether "[Westinghouse] knew that the Navy was aware of the dangers of asbestos"
     and "reasonably concluded that the Navy would provide warnings to its employees."

14

1  **V.    WESTINGHOUSE HAS RAISED A GENUINE ISSUE AS TO ITS**

2  **SUPERSEDING CAUSE DEFENSE.**

3       A third party's unforeseeable intervening negligence can cut off the liability of

4  an otherwise negligent defendant under maritime law. *See, e.g., Barnett v. United*

5  *States*, 650 F. Supp. 3d 412, 434–35 (D.S.C. 2023), *aff'd*, 2025 WL 849903 (4th Cir.

6  Mar. 19, 2025); *Warford v. Indus. Power Sys.*, 2008 WL 4642638 at *11 (D.N.H.

7  2008) ("[m]aritime law recognizes the doctrine of superseding cause to relieve a

8  defendant of liability, even though its actions substantially contributed to the

9  plaintiff's injury, where 'the injury was actually brought about by a later cause of

10  independent origin that was not foreseeable'") (quoting *Exxon Co. U.S.A. v. Sofec,*

11  *Inc.*, 517 U.S. 830, 837 (1996)); see also Schoenbaum, Thomas J., 1 *Admiralty &*

12  *Mar. Law* § 5-3, Causation (5th ed.) (the defense of superseding cause is properly

13  applied in maritime cases). In particular, a third party's non-foreseeable breach of its

14  own duty of care to the injured party can stand as a superseding cause of an injury,

15  cutting off the required causal relationship between the defendant's alleged failure to

16  warn and the plaintiff's harm. *Cf. In re M/V Flaminia*, 339 F. Supp. 3d 185, 237

17  (S.D.N.Y. 2018), *aff'd in part and rev'd in part*, 72 F. 4th 430 (2d Cir. 2023); *see also*

18  *In re Related Asbestos Cases*, 543 F. Supp. at 1150–51.

19       Here, at least a genuine issue has been raised that any causal link between

20  Westinghouse's failure to warn Mr. Hultner of asbestos hazards and his injury was

21  effectively severed by the Navy's unforeseeable failure to follow the dictates of its

22  own widely-publicized asbestos safety program. *In re M/V Flaminia*, 339 F. Supp. 3d

23  at 237; *see also In re Related Asbestos Cases*, 543 F. Supp. at 1150–51. The evidence

24

25  *Cabasug*, 988 F. Supp. 2d at 1228. Unlike the case in *Cabasug*, both of those
showings have been made here based on evidence of Westinghouse's

26  contemporaneous knowledge of the Navy's asbestos safety program and of its
apparent effectiveness in keeping equipment-related asbestos exposures at a level then

27  believed safe. [AUF ##91–92, 94–96]. Such evidence suffices absent any direct
warning to the Navy in that it provides a basis on which Westinghouse "otherwise

28  reasonably concluded that the Navy would provide warnings to its employees
regarding the dangers of asbestos." *Cabasug*, 988 F. Supp. 2d at 1228.

of record here—with Westinghouse actually aware of the Navy's implementation of

its comprehensive asbestos safety program—thus stands in stark contrast to the record

under consideration in *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 814–15 (9th

Cir. 1992), on which Plaintiff heavily relies [Doc. #88, p. 19 of 26], where the

defendants asserting a superseding cause defense simply pointed to the Navy's

purported failure to protect the plaintiffs in that case, but denied any contemporaneous

knowledge on their own part of the existence of asbestos hazards or of the steps taken

by the Navy to address those hazards. Put simply, while it might be reasonably

foreseeable that an employer could fail to appreciate asbestos hazards in the

workplace or to adopt a program to address those hazards, that fact does not speak to

the foreseeability (or lack thereof) of an employer identifying asbestos hazards,

adopting a comprehensive safety program to address those hazards, publicizing the

existence of that program, and then nonetheless inexplicably failing to follow its own

publicized safety rules as to a particular employee. *Cf. Davis*, 975 F.2d at 173–74

(holding that a manufacturer had a right to reasonably rely on an employer to abide by

its own "extensive workplace safety program" whose existence was known to the

manufacturer).[12]

---

[12] Plaintiffs cite to *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm,* 447 F.3d 360, 368 n.25 (5th Cir. 2006), to urge that the Navy's purported failure to follow the dictates of its own asbestos safety program cannot be considered a superseding cause of Plaintiff's injury under the principles set forth at § 442 of the Restatement (Second) of Torts unless the harm caused by the Navy's negligence was somehow "different in kind" from any injury that Mr. Hultner would have incurred as a result of Westinghouse's failure to warn. [Doc. No. 88, p. 23 of 26]. In actuality, rather than serving as a stand-alone factor that is self-determinative of the viability of a superseding cause defense, whether the purported superseding cause causes a "different in kind" harm is just one of six factors identified by § 422 which can be weighed and balanced by the trier of fact. Here, at least a genuine issue is presented as to the viability of Westinghouse's superseding cause defense given remaining questions as to the other factors that are to be considered by the jury—*i.e.*, whether the Navy's failure to follow its own publicized safety rules was unforeseeable and extraordinary, whether the Navy's negligence was an independent force acting antecedent to any purported failure of Westinghouse to include an asbestos warning with its equipment as supplied, whether the Navy's negligence breached duties that the Navy owed to Mr. Hultner, and whether the Navy's negligence was particularly egregious given the depth of its well-established knowledge of health hazards associated with excessive asbestos exposure and its actual knowledge of measures that

16

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

It perhaps bears stressing that Westinghouse's evidence, in addition to supporting its own affirmative defenses, tends to point to a catastrophic failure of Plaintiffs' own essential proof that Westinghouse's failure to warn was a proximate cause of Mr. Hultner's injury. Under maritime law, "for a plaintiff to prevail [on a warning-based claim], he or she must show that the defect in the warnings proximately caused the injuries in question." *Rodriguez v. Torres*, 2015 WL 1138256 at *8 (D.P.R. Mar. 13, 2015), *aff'd sub nom Santos-Rodriguez v. Seastar Solutions*, 858 F.3d 695 (1st Cir. 2017); *see also In re M/V Flaminia*, 339 F. Supp. 3d at 236; *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015). Thus, the plaintiff must show that an adequate warning would have prevented the harm. *Cf. Sherin v. Crane-Houdaille, Inc.*, 47 F. Supp. 3d 280, 300 (D. Md. 2014); *Zimmerman v. Baker-Perkins, Inc.*, 707 F. Supp. 778, 781 (E.D. Pa. 1989) (quoting *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1195 (3d Cir. 1987)); *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995); see also Restatement (Third) of Torts, § 18, cmt. c ("To justify liability in a negligent failure-to-warn case, there must be a finding of causation—a finding that the warning, if given, would have prevented the harm that resulted."). In short:

> Where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury.

*Conti v. Ford Motor Co.*, 743 F.2d 195, 198 (3d Cir. 1984), *cert. denied* 470 U.S. 1028 (1985).

In this regard, "'[i]nadequate warnings cannot serve as a proximate cause of injuries where adequate warnings [would] have resulted in the same injuries.'" *Rodriguez*, 2015 WL 1138256 at *11 (quoting Barry A. Lindahl, 3 *Modern Tort Law: Liability and Litigation* § 27.43 (2d ed.). Rather, there "must be some evidence

---

could minimize or eliminate that risk of harm.

17

tending to suggest that had better warnings been provided then the incident in question
and the [resulting injuries] would have been avoided." *Id.*

Here, Plaintiffs' allegations that the Navy—despite extensive, decades-long,
knowledge of asbestos hazards—did not follow its own asbestos safety rules relative
to Mr. Hultner's service aboard the *Juneau* and the *John Adams* does not simply
reflect an unforeseeable breach of the Navy's lawful duties as an employer and
premises owner. Rather, it demonstrates that, whatever else can be said of the Navy's
purported failure to enforce its own asbestos safety rules, its failure to do so was not
the product of a lack of warnings or information about asbestos hazards. As such, and
given the sworn admissions of Plaintiffs' own Navy expert that the Navy exercised
complete and exclusive autonomy over its shipyards, its shipyard personnel, and the
safety practices followed in its shipyards and aboard its ships, Plaintiffs' failure-to-
warn claims likewise fail in that they cannot show that asbestos hazard warnings from
Westinghouse would have materially changed his working conditions aboard Navy
vessels. Compare *McKay*, 704 F.2d at 454–55.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Westinghouse respectfully requests that Plaintiffs'
motion for partial summary judgment be denied.

Dated: April 11, 2025                JAMISON EMPTING CRONIN, LLP


By:    */s/ Justin F. Cronin*
JUSTIN F. CRONIN
Attorneys for Defendant
Paramount Global, f/k/a ViacomCBS Inc.,
f/k/a CBS Corporation, a Delaware
corporation, f/k/a Viacom Inc., successor
by merger to CBS Corporation, a
Pennsylvania corporation, f/k/a
Westinghouse Electric Corporation

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    **VII.  L.R. 11-6.2 WORD COUNT CERTIFICATE OF COMPLIANCE**

2

3        The undersigned, counsel of record for Defendant Paramount Global certifies

4    that this brief contains 6,898 words, which [choose one]:

5        ☒ complies with the word limit of L.R. 11-6.1.

6        ☐ complies with the word limit set by court order dated [date].

7        Executed this 11th day of April, 2025.

8

9    Dated: April 11, 2025                    JAMISON EMPTING CRONIN, LLP

10                                      By:    _/s/ Justin F. Cronin_

11                                            JUSTIN F. CRONIN
                                             Attorneys for Defendant
12                                           Paramount Global, f/k/a ViacomCBS Inc.,
                                             f/k/a CBS Corporation, a Delaware
13                                           corporation, f/k/a Viacom Inc., successor
                                             by merger to CBS Corporation, a
14                                           Pennsylvania corporation, f/k/a
                                             Westinghouse Electric Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO
PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 825 East Fourth Street, Suite 204, Los Angeles, CA 90013.

On April 11, 2025, I served the following document(s): **DEFENDANT PARAMOUNT GLOBAL'S MEMORANDUM OF POINTS IN OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES** on the interested parties in this action by placing a true and correct copy of such document, enclosed in a sealed envelope, addressed as follows:

| | |
|---|---|
| FROST LAW FIRM, PC<br>273 West 7th Street,<br>San Pedro, CA 90731<br>T: 866-353-6373<br>F 310-361-8803 | THE LAW OFFICES OF WORTHINGTON & CARON, PC<br>273 West 7th Street<br>San Pedro, California 90731<br>T 310-221-8090<br>F 310-221-8095 |

*Attorney for Plaintiffs*

And All Parties Registered to receive electronic notification on this matter

☐   I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at, Los Angeles, California.

☒   By E-Service: I electronically served the above document(s) via PACER CM/ECF and/or File & ServeXpress on the recipients as registered and designated to receive electronic notification.

☐   By Personal Service: I caused to be delivered by courier **Nationwide Legal Express,** such envelope by hand to the offices of the above addressee(s).

Executed: April 11, 2025

☐   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*James Choi*

4810.0870

---

MPA ISO DEFENDANT PARAMOUNT GLOBAL'S OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT