KEVIN D. JAMISON (SBN 22105)
kjamison@jec-legal.com
ERIN N. EMPTING (SBN 272130)
eempting@jec-legal.com
JUSTIN F. CRONIN (SBN 260188)
jcronin@jec-legal.com
JAMISON EMPTING CRONIN, LLP
825 East 4th Street, Suite 204
Los Angeles, California  90013
Telephone: (213) 246-2732
Facsimile: (626) 314-1833

Attorneys for Defendant
Paramount Global, f/k/a ViacomCBS
Inc., f/k/a CBS Corporation, a
Delaware corporation, f/k/a Viacom
Inc., successor by merger to CBS
Corporation, a Pennsylvania
corporation, f/k/a Westinghouse
Electric Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT. L. HULTNER and GERALDINE E. HULTNER,<br><br>Plaintiffs,<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORPORATION (*sued individually and as successor-in-interest to* BUFFALO PUMPS, INC.,) et al.,<br><br>Defendants. | Case No:  8:24-cv-00409-JLS (DFMx)<br><br>**DEFENDANT PARAMOUNT GLOBAL'S RESPONSE TO PLAINTIFFS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES**<br><br>Hearing Date       May 2, 2025<br>Hearing Time:     10:30 a.m.<br>Judge:               Hon. Josephine L. Staton<br>Location:           Courtroom 8A. 8th Floor<br><br>Complaint Filed:  February 27, 2024<br>Pre-Trial Conf.:   August 22, 2025 |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

Before turning to the substance of each of Plaintiffs' individual statements of fact, Paramount Global ("Westinghouse") [1] notes that the sole evidentiary support identified by Plaintiffs for each of these statements is the unsworn expert report of their Navy expert, Arnold Moore. As such, each of Plaintiffs' statements of fact are wholly unsupported, as an unsworn statement that has not been made under penalty of perjury is incompetent evidence for summary judgment purposes. *See*, *e.g.*, *Liebling v. Novartis Pharms. Corp.*, 2014 WL 1256619 at *1–2 (C.D. Cal. Mar. 24, 2014) (Morrow, J.) (collecting cases). Accordingly, each of Plaintiffs' individual statements of fact should be disregarded in this Court's consideration of Plaintiffs' motion for partial summary judgment (*i.e.*, for summary adjudication).

Subject to and without waiving this objection, Westinghouse responds to each of Plaintiffs' separately-enumerated statements of fact as follows:

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 1. Mr. Hultner was diagnosed with malignant mesothelioma after having served in the United States Navy from 1971 through early 1978.<br><br>***Supporting Evidence:***<br>**Ex. 1**, Report of Captain Arnold Moore at p. 3-5. | 1. <u>Undisputed</u>. |
| 2. Mr. Hultner completed basic training at the Naval Training Center in San Diego, California in June of 1971. | 2. <u>Undisputed</u>. |

[1] Paramount Global (a Delaware corporation formerly known as ViacomCBS Inc.; as CBS Corporation; and as Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation formerly known as Westinghouse Electric Corporation).

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** **Ex. 1**, Report of Captain ***Arnold*** Moore at p. 3. | |
| 3. Mr. Hultner subsequently attended the Navy Basic Propulsion School at the Great Lakes Naval Training Center in the summer of 1971, graduating in October of 1971. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 3. | 3. Undisputed. |
| 4. After graduation, Mr. Hultner was assigned to the USS Juneau (LPD-10) ("Juneau") for a period of 75 days. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 3. | 4. Undisputed. |
| 5. Mr. Hultner's work on the Juneau involved cross training on a variety of equipment, including pumps and valves. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 4 | 5. Undisputed in Part and Disputed in Part. SUF #5 is admitted except to the extent that the phrase "a variety of equipment, including pumps and valves" is intended to include turbines as well. Mr. Hultner specifically denied participating in any repair or maintenance work on a turbine of any kind (including pump-drive turbines) and likewise denied recalling seeing such work performed by anyone else while on the USS Juneau. <br><br> ***Supporting Evidence:*** Depo. of Pl. Scott L. Hultner, Vol. 2,, taken Aug. 13, 2024 ("Hultner Depo., Vol. 2") at 148:15–18, 149:17–19, attached as **Exhibit A** to the concurrently filed Decl. of Justin |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | F. Cronin ("Cronin Decl."). |
| 6. Mr. Hultner then attended and graduated from nuclear power school at Vallejo, California.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 3 | 6. <u>Undisputed</u>. |
| 7. Mr. Hultner served aboard the USS John Adams (SSBN-620) ("John Adams"), a nuclear-powered submarine, from April 1973 through January 1978.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 3. | 7. <u>Undisputed</u>. |
| 8. While serving aboard the John Adams as a Machinist Mate, Mr. Hultner was responsible for working on "everything from the reactor back to the propeller" including, steam generators, turbine generators, generator oil systems, distilling plants, pumps, valves, all the high-pressure steam equipment and plant charging valves.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 4. | 8. <u>Undisputed in Part and Disputed in Part</u>. SUF #8 is undisputed to the extent that it is simply intended as a description of the general jurisdiction of machinist mates aboard the John Adams. It is disputed to the extent that it is intended to state or imply that Mr. Hultner personally participated in repair or maintenance work on all of the equipment "from the reactor back to the propeller" of the submarine. Rather, Mr. Hultner expressly denied participating in any hands-on maintenance or repair work of any kind involving Westinghouse equipment within the USS John Adams' reactor compartment.<br><br>***Supporting Evidence:***<br>Hultner Depo., Vol. 2 at 217:11–218:2, 222:5–16, attached as **Exhibit A** to the Cronin Decl. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 9. Mr. Hultner also stood watches as the engineering supervisor.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 4. | 9. <u>Undisputed</u>. |
| 10. Mr. Hultner testified that he and his shipmates "did a ton of maintenance on everything to get it ready to go to sea to ensure we didn't have any problems at sea."<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 4. | 10. <u>Undisputed in Part and Disputed in Part</u>. SUF #10 is undisputed to the extent that it accurately states Mr. Hultner's testimony. Hultner Depo., Vol. 1 at 23:14–16. It is disputed to the extent that it is intended to state or imply that the "everything" referenced by Mr. Hultner in fact included work performed on all items of equipment aboard the John Adams. Again, Mr. Hultner expressly denied participating in any hands-on maintenance or repair work of any kind involving Westinghouse equipment within the John Adams' reactor compartment.<br><br>***Supporting Evidence:***<br>Depo., of Pl. Scott L. Hultner, Vol. 1, taken Aug. 5, 2024 ("Hultner Depo., Vol. 1") at 23:14–16, attached as **Exhibit B** to the Cronin Decl.; Hultner Depo., Vol. 2 at 217:11–218:2, 222:5–16, attached as **Exhibit A** to the Cronin Decl. |
| 11. Mr. Hultner testified to asbestos exposure from working on pumps.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 15 | 11. <u>Undisputed in Part and Disputed in Part</u>. SUF #11 is undisputed to the extent that it is intended to simply state that Mr. Hultner believed that he was exposed to asbestos from his work on pumps. It is disputed to the extent that it is intended to state |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | or imply that Mr. Hultner had actual knowledge of any specific facts giving rise to personal knowledge on his part that any of the materials he handled in this work were, in fact, asbestos-containing. Rather, Mr. Hultner simply assumed all gasket and packing material to have been asbestos-containing because it appeared "fibrous" to his naked eye. **_Supporting Evidence:_** Depo. of Pl. Scott L. Hultner, Vol. 6, taken Aug. 21, 2024 ("Hultner Depo., Vol. 6") at 924:22–925:14, attached as **Exhibit C** to the Cronin Decl. |
| 12. Mr. Hultner recalled replacing asbestos gaskets on pumps as well as the asbestos packing sealing pump shafts. **_Supporting Evidence:_** **Ex. I** Report of Captain Arnold Moore at p. 15. | 12. Undisputed in Part and Disputed in Part.  SUF #12 is undisputed to the extent that it is intended to simply state that Mr. Hultner believed that the gaskets and packing materials used in his work on pumps contained asbestos.  It is again disputed to the extent that it is intended to state or imply that Mr. Hultner had actual knowledge of any specific facts giving rise to personal knowledge on his part that any of these materials were, in fact, asbestos-containing. Rather, Mr. Hultner simply assumed all gasket and packing material to have been asbestos-containing because it appeared "fibrous" to his naked eye. **_Supporting Evidence:_** Hultner Depo., Vol. 6 at 924:22–925:14, attached as **Exhibit C** to the Cronin Decl. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 13. Mr. Hultner specifically recalled working with Buffalo pumps.<br><br>***Supporting Evidence:***<br>Report of Captain Arnold Moore at p. 15. | 13. Undisputed. |
| 14. When asked if he breathed dust from work on these pumps, Mr. Hultner responded "Yes" and added that he worked on these pumps continuously.<br><br>***Supporting Evidence:***<br>Report of Captain Arnold Moore at p. 15. | 14. Undisputed as Stated. While Mr. Hultner testified that work on pumps generally was "continual," he could not state or even estimate how often he performed repair work on a "Buffalo" pump.<br><br>***Supporting Evidence:***<br>Depo. of Pl. Scott L. Hultner, Vol. 4 ("Hultner Depo., Vol. 4") at 607:14–23. 609:3–10, attached as **Exhibit D** to the Cronin Decl. |
| 15. He recalls working with pumps on both the Juneau and the John Adams.<br><br>***Supporting Evidence:***<br>Report of Captain Arnold Moore at p. 15. | 15. Undisputed. |
| 16. Buffalo pumps with asbestos packing and compressed asbestos sheet gaskets were installed on both the Juneau and John Adams.<br><br>***Supporting Evidence:***<br>Report of Captain Arnold Moore at p. 18. | 16. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #16, which appears to relate solely to a co-defendant in this case. |
| 17. Technical manuals records from the Juneau indicate that Buffalo manufactured pumps to support the distilling plant. | 17. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #17, which appears to relate solely to a co-defendant in this case. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** Report of Captain Arnold Moore at p. 30. | |
| 18. Buffalo also manufactured pumps for the reactor plant aboard the John Adams.<br><br>***Supporting Evidence:*** **Ex. I** Report of Captain Arnold Moore at p. 34. | 18. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #18, which appears to relate solely to a co-defendant in this case. |
| 19. Moreover, Buffalo sold replacement parts, including asbestos gaskets for its products to the Navy.<br><br>***Supporting Evidence:*** **Ex. I** Report of Captain Arnold Moore at p. 19, 46-47. | 19. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #19, which appears to relate solely to a co-defendant in this case. |
| 20. A General Electric letter from 1965 indicated that GE manufactured the main propulsion turbine sets and main propulsion reduction gears installed aboard the Juneau.<br><br>***Supporting Evidence:*** **Ex. I** Report of Captain Arnold Moore at p. 27. | 20. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #20, which appears to relate solely to a co-defendant in this case. |
| 21. Two sets of this equipment were installed aboard the Juneau.<br><br>***Supporting Evidence:*** **Ex. I** Report of Captain Arnold Moore at p. 27. | 21. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #21, which appears to relate solely to a co-defendant in this case. |
| 22. GE documents specify the use of asbestos sheet gaskets and asbestos gaskets in this equipment. | 22. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #22, which appears to relate solely to a co-defendant in this case. |

8

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 27. | |
| 23. Additionally, GE was fully aware that its turbines would be insulated with asbestos material. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p.27. | 23. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #23, which appears to relate solely to a co-defendant in this case. |
| 24. GE also manufactured products for installation aboard the John Adams. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 34. | 24. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #24, which appears to relate solely to a co-defendant in this case. |
| 25. GE manufactured the main propulsion turbines and main reduction gears for the John Adams. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 34. | 25. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #25, which appears to relate solely to a co-defendant in this case. |
| 26. Like the turbines aboard the Juneau, these turbines required the use of asbestos containing components. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 34-35. | 26. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #26, which appears to relate solely to a co-defendant in this case. |
| 27. GE also manufactured the main coolant pumps for the nuclear reactor aboard the John Adams. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 34. | 27. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #27, which appears to relate solely to a co-defendant in this case. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY
JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 28. Finally, GE manufactured two generators for use aboard the John Adams.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 36. | 28. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #28, which appears to relate solely to a co-defendant in this case. |
| 29. Mr. Hultner testified to working on other components in the engine room within 6 or 7 feet of the GE turbines while an overhaul was done.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 35. | 29. <u>Undisputed</u>. |
| 30. Mr. Hultner also testified that insulation blankets had to be removed to open the turbine casings while he was in the vicinity.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 35. | 30. <u>Undisputed</u>. |
| 31. Mr. Hultner's shipmate, Mr. Armbrister testified that the removal of insulating blankets created dust, which machinist mates like Mr. Hultner worked in, worked around, and had to clean up.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 36. | 31. <u>Undisputed</u>. |
| 32. Mr. Hultner testified to working with Westinghouse compressors or working in the vicinity of others working on Westinghouse compressors. | 32. <u>Disputed</u>. Rather than stating that he worked on or around multiple "Westinghouse" compressors, the single compressor Mr. Hultner could specifically associate with the name "Westinghouse" was the |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 7. | compressor associated with the $CO_2$ scrubber system aboard the John Adams. <br><br> ***Supporting Evidence:*** Hultner Depo., Vol. 2 at,214:11– 215:1, 215:16–20, attached as **Exhibit A** to the Cronin Decl. <br><br> Surviving Navy records, in fact, verify that this single compressor was the only compressor associated in any way with the name "Westinghouse" aboard the John Adams.  Further, these same records establish that the compressor in question was actually manufactured and supplied by the Westinghouse Air Brake Company ("WABCO"), not by Paramount Global's predecessor, the Westinghouse Electric Corporation. <br><br> ***Supporting Evidence:*** NAVHIPS 0904-003401010, *Preliminary Index of Technical Publications, USS John Adams – SSB(N) 620*, pp. 1-3 through 1-4, attached as **Exhibit E** to the Cronin Decl. <br><br> WABCO, a separate corporate entity from Westinghouse Electric Corporation, was formed in 1869; continuously operated under that name (or as the "Westinghouse Air Brake Division") throughout its existence; was acquired by American Standard Inc in 1968.; and has never been part of Paramount Global or its predecessor, the Westinghouse Electric Corporation. |

11

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | ***Supporting Evidence:*** Affidavit of Michael T. Sweeney, Jan. 13, 2000, made in the matter of *Fong v. Owens-Corning, et al.* (Alameda County Superior Court Case No. 801450-0) ("Sweeney Aff."), ¶ 3, attached as **Exhibit F** to the Cronin Decl.; Westinghouse Air Brake Division's Answers and Responses to Plaintiffs' Interrogatories and Request for Production of Documents (Set I), from the matter *In re Minnesota Personal Injury Asbestos Cases* ((Ramsey County District Court, Second Judicial District Court File No. C8-94-2875) ("WABCO Interrogatory Responses"), pp. 1–2, attached as **Exhibit G** to the Cronin Decl. |
| 33. Mr. Hultner testified that these compressors had asbestos gaskets sealing the inlets and outlets of these compressors. <br><br> ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 7. | 33. Disputed.  Once again, to the extent that the phrase "these compressors" is intended to reference compressors associated with the name "Westinghouse," Mr. Hultner only identified a single specific compressor with the name "Westinghouse" – *i.e.*, the compressor associated with the *John Adams'* $CO_2$ scrubber system – not multiple compressors. <br><br> ***Supporting Evidence:*** Hultner Depo., Vol. 2 at 214:11–215:1, 215:16–20, attached as **Exhibit A** to the Cronin Decl. <br><br> Further, this specific compressor was, once again, manufactured and supplied by WABCO, not by Westinghouse. <br><br> ***Supporting Evidence:*** |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | NAVHIPS 0904-003401010, *Preliminary Index of Technical Publications, USS John Adams – SSB(N) 620*, p. 1-3, attached as **Exhibit E** to the Cronin Decl.<br><br>Finally, while Mr. Hultner stated that he believed that the flange gaskets associated with the WABCO compressor were asbestos-containing, he lacked actual knowledge of any specific facts giving rise to personal knowledge on his part that any of these gaskets were, in fact, asbestos-containing. Rather, Mr. Hultner simply assumed all gasket and packing material to have been asbestos-containing because it appeared "fibrous" to his naked eye.<br><br>***Supporting Evidence:***<br>Hultner Depo., Vol. 6 at 924:22–925:14, attached as **Exhibit C** to the Cronin Decl. |
| 34. Mr. Armbrister testified that other sailors frequently worked on the Westinghouse compressors on the John Adams, leading to the creation of dust which all the sailors worked in.<br><br>***Supporting Evidence:***<br>**Ex. I** Report of Captain Arnold Moore at p. 7. | 34. Disputed. Rather than recalling multiple "Westinghouse" compressors, the only compressor that Mr. Armbrister associated with that name was the WABCO compressor associated with the John Adams' $CO_2$ scrubber system.<br><br>***Supporting Evidence:***<br>Depo. of Dale Armbrister, Vol. 1, taken Dec. 9, 2024 ("Armbrister Depo., Vol. 1") at 60:2–10, attached as **Exhibit H** to the Cronin Decl.<br><br>Mr. Armbrister actually had no recollection of ever seeing any work performed on that |

13

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
| --- | --- |
| | particular compressor on a single occasion in his or Mr. Hultner's presence but assumed some type of work was performed on that compressor by other sailors an unspecified number of times. Armbrister Depo., Vol. 1 at 58:19–23, 59:17–21, attached as **Exhibit H** to the Cronin Decl.; Depo. of Dale Armbrister, Vol. 2, taken Dec. 16, 2024 ("Armbrister Depo., Vol. 2") at 104:6–105:18, attached as **Exhibit I** to the Cronin Decl. |
| 35. Documents produced by Westinghouse in this case indicate that Westinghouse manufactured the turbines driving the main circulating pumps in the Juneau. **_Supporting Evidence:_** **Ex. I** Report of Captain Arnold Moore at p. 29. | 35. Undisputed. |
| 36. Westinghouse manufactured metallic asbestos spiral wound gaskets used with the turbines aboard the Juneau. **_Supporting Evidence:_** **Ex. I** Report of Captain Arnold Moore at p. 28. | 36. Disputed as Stated. The document referenced by Captain Moore in his report does not reflect that Westinghouse ever manufactured metallic-asbestos spiral wound gaskets. Rather, the document in question simply reflects that Westinghouse, in keeping with the dictates of the Navy's own detailed design specifications (or "MilSpecs"), purchased such gaskets from third parties for use in the manufacture of certain items of Navy equipment. |

14

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 37. Westinghouse also manufactured the reactor plant and reactor plant valves installed aboard the John Adams.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 34. | 37. <u>Undisputed</u>. |
| 38. Mr. Hultner testified to asbestos exposure from working on between 100 and 200 valves while serving in the Navy.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 10, 14. | 38. <u>Undisputed in Part and Disputed in Part</u>.  SUF #38 is undisputed to the extent that it is intended to simply state that Mr. Hultner believed that the gaskets and packing materials used in his work on valves contained asbestos.  It is again disputed to the extent that it is intended to state or imply that Mr. Hultner had actual knowledge of any specific facts giving rise to personal knowledge on his part that any of these materials were, in fact, asbestos-containing. Rather, Mr. Hultner simply assumed all gasket and packing material to have been asbestos-containing because it appeared "fibrous" to his naked eye.<br><br>***Supporting Evidence:***<br>Hultner Depo., Vol. 6 at 924:22–925:14, attached as **Exhibit C** to the Cronin Decl. |
| 39. Mr. Hultner estimated that he personally worked on Crane valves a couple dozen times and stood next to someone working on a Crane valve another dozen to two dozen times. | 39. <u>Undisputed</u>. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** *Ex.. 1*, Report of Captain Arnold Moore at p. 14. | |
| 40. Mr. Hultner testified that he specifically recalled removing packing and gaskets from Crane valves.<br><br>***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 15. | 40. Undisputed. |
| 41. Crane manufactured a variety of valves for use aboard Lafayette Class submarines, like the John Adams.<br><br>***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 14. | 41. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #41, which appears to relate solely to a co-defendant in this case. |
| 42. Crane also manufactured a variety of valves for use aboard the Juneau.<br><br>***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 14. | 42. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #42, which appears to relate solely to a co-defendant in this case. |
| 43. These valves required and utilized asbestos component parts, like packing and gaskets.<br><br>***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 31, 33. | 43. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #43, which appears to relate solely to a co-defendant in this case. |
| 44. Furthermore, Crane supplied the Navy with asbestos-containing replacement parts for these valves.<br><br>***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 47-48. | 44. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #44, which appears to relate solely to a co-defendant in this case. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 45. Mr. Hultner testified to working on Andale strainers.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 7. | 45. <u>Undisputed</u>. |
| 46. Mr. Hultner specifically recalls the asbestos packing and gaskets used on these strainers.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 8. | 46. <u>Undisputed in Part and Disputed in Part</u>. SUF #46 is undisputed to the extent that it is intended to simply state that Mr. Hultner believed that the gaskets and packing materials were used with Andale strainers. It is again denied to the extent that it is intended to state or imply that Mr. Hultner had actual knowledge of any specific facts giving rise to personal knowledge on his part that any of these materials were, in fact, asbestos-containing. Rather, Mr. Hultner simply assumed all gasket and packing material to have been asbestos-containing because it appeared "fibrous" to his naked eye.<br><br>***Supporting Evidence:***<br>Hultner Depo., Vol. 6 at 924:22–925:14, attached as **Exhibit C** to the Cronin Decl. |
| 47. Mr. Hultner also recalls cleaning Andale strainers to remove the debris and sediment.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 8. | 47. <u>Undisputed</u>. |
| 48. Mr. Hultner testified that this work exposed him to dust. | 48. <u>Undisputed</u>. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 8. | |
| 49. Navy submarine records indicate that Andale manufactured multiple types of strainers for use aboard the John Adams. ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 8. | 49. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #49, which appears to relate solely to a co-defendant in this case. |
| 50. Andale also manufactured strainers for use aboard the Juneau. ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 8. | 50. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #50, which appears to relate solely to a co-defendant in this case. |
| 51. Further, Andale sold replacement asbestos gaskets and asbestos packing for its products to the Navy. ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 8, 45. | 51. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #43, which appears to relate solely to a co-defendant in this case. |
| 52. Mr. Hultner specifically recalled working with Warren pumps. ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 15. | 52. Undisputed. |
| 53. When asked if he breathed dust from work on these pumps, Mr. Hultner responded "Yes" and added that he worked on these pumps continuously. ***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 15. | 53. Disputed as Stated. While Mr. Hultner testified that work on pumps generally was "continual," he could not state or even estimate how often he performed repair work on a "Warren" pump. ***Supporting Evidence:*** |

18

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | Hultner Depo., Vol. 4 at 602:25–603:6, attached as **Exhibit D** to the Cronin Decl. |
| 54. He recalls working with pumps on both the Juneau and the John Adams.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 15. | 54. <u>Undisputed</u>. |
| 55. Ship and submarine records indicate a number of Warren pumps installed on both the Juneau and the John Adams.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 15. | 55. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #55, which appears to relate solely to a co-defendant in this case. |
| 56. Warren also sold replacement asbestos gaskets and packing for its products to the Navy and to shipyards repairing Navy ships.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 15. | 56. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #56, which appears to relate solely to a co-defendant in this case. |
| 57. Warren drawings and technical manuals call for the use of asbestos components in its pumps.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 28. | 57. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #57, which appears to relate solely to a co-defendant in this case. |
| 58. Adding warning labels to machinery and equipment supplied to the Navy was easily accomplished and was not prohibited by the Navy; in fact, the Navy required its equipment manufacturers to provide warnings of | 58. <u>Disputed</u>. As previously admitted under oath by Plaintiffs' Navy expert in this case, the Navy's extensive control over the design, manufacture and supply of |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| the hazards associated with equipment delivered to the Navy and the Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products.<br><br>***Supporting Evidence:***<br>**Ex. 1** Report of Captain Arnold Moore at p. 33, 53, 57-58. | Westinghouse's Navy propulsion equipment extended to the warnings to be supplied therewith, with the Navy: imposing detailed Navy specifications ("MilSpecs") that controlled the format and content of such warnings; carefully reviewing all equipment-related warnings to ensure MilSpec compliance; and approving the warnings as drafted by Westinghouse despite a lack of asbestos-related warnings and despite the Navy's independent knowledge of asbestos hazards.<br><br>***Supporting Evidence:***<br>Affidavit of Rear Admiral John B. Padgett, III, Mar. 25, 2025 ("Padgett Aff."), ¶¶ 20, 67–68, 78, attached as **Exhibit J** to the Cronin Decl.; Depo. of Arnold Moore, taken Mar. 14. 2025 in the matter of *Skudin v. Air & Liquid Systems Corp.*, (D. Haw. Case No. CV-22-0425 SASP-RT) ("Moore Depo,") at 104:12–105:2, 145:7–14, attached as **Exhibit K** to the Cronin Decl.<br><br>Thus, Westinghouse could not provide any warning of any type with its Navy equipment outside the scope of this Navy review and approval process.<br><br>***Supporting Evidence:***<br>Padgett Aff., ¶ 79, attached as **Exhibit J** to the Cronin Decl.; Moore Depo. at 145:15–146:14, 148:23–149:8, 199:1–6, attached as **Exhibit K** to the Cronin Decl.<br><br>Additionally, to the extent SUF #58 is intended to state or imply that asbestos-related warnings, |

20

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | specifically, were required by the various Navy rules and regulations referenced in the unsworn expert report of Arnold Moore, that statement is disputed.  While various of these Navy rules generally called for warnings of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings.<br><br>***Supporting Evidence:***<br>Padgett Aff., ¶¶ 76–78, attached as **Exhibit J** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl.<br><br>In fact, on the only known occasion when the Navy specifically considered the question, it determined that an asbestos warning was ***not*** called for by the Navy rules and regulations at issue.<br><br>***Supporting Evidence:***<br>Padgett Aff., ¶ 76, attached as **Exhibit J** to the Cronin Decl.; Report of Samuel Forman, Mar. 27, 2025 ("Forman Report"), ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 107:14–108:9 attached as **Exhibit K** to the Cronin Decl. |
| 59. The Navy required equipment manufacturers to include safety precautions in their equipment instruction books even before Mr. Hultner began serving in the Navy. | 59. Undisputed in Part and Disputed in Part.  Once again, to the extent SUF #59 is intended to state or imply that asbestos-related warnings, specifically, were required by Navy rule or |

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** Ex.. **1**, Report of Captain Arnold Moore at p. 53-54. | regulation, that statement is disputed as, while various Navy rules generally called for warnings of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings and the Navy, itself, interpreted these rules and regulations as not calling for asbestos-related warnings.<br><br>***Supporting Evidence:*** Padgett Aff., ¶¶ 76–78, attached as **Exhibit J** to the Cronin Decl.; Forman Report, ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 107:14–108:9, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 60. In 1936, Bureau of Engineering, Navy Department, required manufacturers to provide safety precautions in their Instruction Books.<br><br>***Supporting Evidence:*** **Ex. 1** Report of Captain Arnold Moore at p. 53. | 60. Undisputed in Part and Disputed in Part.  While § S1-1-h(1)(e) of the referenced 1936 Navy specification directed Navy equipment suppliers to include unspecified "[s]afety precautions" in their instruction books, this specification did not further define the type of "safety precaution needed" nor did it specifically require any asbestos-related warnings.<br><br>***Supporting Evidence:*** Padgett Aff., ¶ 76, attached as **Exhibit J** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 61. The Military Specification MIL-B-15071 (SHIPS) dated April 1950 and | 61. Undisputed in Part and Disputed in Part.  While various iterations |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| the succeeding Military Specifications, MILB- 15071A (SHIPS) dated October 1952 and MIL-T-15071B (SHIPS) dated April 1954, required safety notices for special hazards involved with products and precautions to be identified and for new pages to instruction manuals to be added for hazard warnings if hazards become known after the manual has been shipped.<br><br>***Supporting Evidence:***<br>Ex.. **1**, Report of Captain Arnold Moore at p. 53-54. | of the Navy's specification for the format and content of equipment technical manuals directed Navy equipment suppliers to include warnings or instructions regarding of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings and the Navy, itself, interpreted its rules and regulations as not calling for asbestos-related warnings.<br><br>***Supporting Evidence:***<br>Padgett Aff., ¶¶ 76–78, attached as **Exhibit I** to the Cronin Decl.; Forman Report, ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 107:14–108:9, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 62. Military Specifications MIL-M-15071C (SHIPS) issued in September 1957 required the use of emphatics in warnings, and required warnings for operating procedures or practices that would result in personnel injury or loss of life.<br><br>***Supporting Evidence:***<br>Ex.. **1**, Report of Captain Arnold Moore at p. 54. | 62. Undisputed in Part and Disputed in Part. As stated in response to SUF #61, while various iterations of the Navy's specification for the format and content of equipment technical manuals directed Navy equipment suppliers to include warnings or instructions regarding of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings and the Navy, itself, interpreted its rules and regulations as not calling for asbestos-related warnings.<br><br>***Supporting Evidence:*** |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| | Padgett Aff., ¶¶ 76–78, attached as **Exhibit I** to the Cronin Decl.; Forman Report, ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 107:14–108:9, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 63. These were the same requirements in MilSpecs MIL-M-15071D (SHIPS) issued in 1961.<br><br>***Supporting Evidence:***<br>Ex.. **I**, Report of Captain Arnold Moore at p. 54. | 63. <u>Undisputed in Part and Disputed in Part.</u>  As stated in response to SUFs ##61 and 62, while various iterations of the Navy's specification for the format and content of equipment technical manuals directed Navy equipment suppliers to include warnings or instructions regarding of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings and the Navy, itself, interpreted its rules and regulations as not calling for asbestos-related warnings.<br><br>***Supporting Evidence:***<br>Padgett Aff., ¶¶ 76–78, attached as **Exhibit J** to the Cronin Decl.; Forman Report, ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 107:14–108:9, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 64. Thereafter, in MilSpecs MIL-M-15071E issued in 1962, the General Specifications also required safety precautions for installation instructions during equipment unpacking, handling, and installation. | 64. <u>Undisputed in Part and Disputed in Part.</u>  As stated in response to SUFs ##61 through 63, while various iterations of the Navy's specification for the format and content of equipment technical manuals directed Navy equipment suppliers to include |

24

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:***<br>Ex.**. 1**, Report of Captain Arnold Moore at p. 54. | warnings or instructions regarding of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings and the Navy, itself, interpreted its rules and regulations as not calling for asbestos-related warnings.<br><br>***Supporting Evidence:***<br>Padgett Aff., ¶¶ 76–78, attached as **Exhibit J** to the Cronin Decl.; Forman Report, ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 103:23–104:11, 107:14–108:9, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 65. Despite these requirements, Mr. Hultner testified that he never saw warning labels on any equipment or received any warnings from equipment manufacturers.<br><br>***Supporting Evidence:***<br>Ex.**. 1**, Report of Captain Arnold Moore at p. 19, 23-24. | 65. <u>Undisputed</u>. |
| 66. Mr. Hultner stated that even the manufacturers' repair kits containing replacement gaskets and packing never included any warnings.<br><br>***Supporting Evidence:***<br>*Ex.**. 1***, Report of Captain Arnold Moore at p. 24. | 66. <u>Undisputed</u>. |
| 67. Mr. Hultner testified that Buffalo failed to warn him and his fellow sailors of the hazards of asbestos in its pumps. | 67. <u>Undisputed</u>. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** *Ex.* **1**, Report of Captain Arnold Moore at p. 19. | |
| 68. This testimony is corroborated by testimony from Buffalo's representative, Mr. Martin Kraft, indicating that warnings were not placed on Buffalo's asbestos products until 1987.<br><br>***Supporting Evidence:*** *Ex.* **1**, Report of Captain Arnold Moore at p. 47. | 68. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #68, which appears to relate solely to a co-defendant in this case. |
| 69. Mr. Michael Burt, one of General Electric's Rule 30(b)(6) witnesses, testified in a previous case that in all of the documents he reviewed, he did not see any warnings or statements by GE that asbestos could pose a hazard to any of the users of its product, including GE turbines<br><br>***Supporting Evidence:*** *Ex.* **2**, Deposition of Michael Burt, GE's Corporate Representative, taken December 15, 2023 ("Burt Depo"), p. 36:22-37:4, 37:18-38:2.. | 69. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #69, which appears to relate solely to a co-defendant in this case. |
| 70. Crane was aware that warnings were not prohibited—in fact, on March 6, 1983, Crane Co. issued drawing number 3150677, titled *Asbestos Cautionary Tag* that stated "CAUTION Contains Asbestos Packing or Gasket", which were placed on Crane Co. valves.<br><br>***Supporting Evidence:*** *Ex.* **1**, Report of Captain Arnold Moore, p. 33. | 70. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #70, which appears to relate solely to a co-defendant in this case. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| 71. However, Crane Co admits in its responses to interrogatories from a prior case that statements regarding asbestos on its products did not appear until the 1980s, well after Mr. Hultner's work with Crane valves, gaskets, and packing.<br><br>***Supporting Evidence:***<br>Ex.. **3**, Crane Co.'s Objections and Responses to Plaintiff's LAOSD General Order Standard Interrogatories to Defendant Crane Co., p. 49:15-28. | 71. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or deny SUF #71, which appears to relate solely to a co-defendant in this case. |
| 72. Tate Andale previously admitted in their response to interrogatories that they did not warn of any health hazards of asbestos.<br><br>***Supporting Evidence:***<br>Ex.. **5**, Defendant Tate Andale, LLC's, f/k/a Tate Andale, Inc.'s Responses to Plaintiffs' Standard Interrogatories, p. 22:8-23. | 72. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or deny SUF #72, which appears to relate solely to a co-defendant in this case. |
| 73. Roland Doktor was deposed on March 27, 2007 as the Person Most Knowledgeable in the Los Angeles Superior Court Case *Richard Walmach, et al. v. Aqua-Chem, Inc.*, Case No. BC336186. Mr. Doktor testified that based on his knowledge from his review of documents, Warren had never warned its purchasers or used of the hazards of asbestos.<br><br>***Supporting Evidence:***<br>Ex.. **4**, Deposition of Roland Doktor ["Doktor Depo."], p. 7:22-8:16. | 73. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #73, which appears to relate solely to a co-defendant in this case. |
| 74. It was only in the 1980s that Warren reviewed Navy specifications to | 74. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #74, which |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| determine whether their asbestos-containing products were safe.<br><br>***Supporting Evidence:***<br>Ex.**. 4**, Deposition of Roland Doktor ["Doktor Depo."], p. 166:10-23. | appears to relate solely to a co-defendant in this case. |
| 75. During his deposition, Mr. Doktor conceded that in the 1970's Warren could have put warnings on their equipment and replacement parts, and that he did not believe there was anything preventing Warren from placing warnings about potential hazards such as asbestos.<br><br>***Supporting Evidence:***<br>*Ex.***. 4**, Deposition of Roland Doktor ["Doktor Depo."], p. 167:15-168:17. | 75. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #71, which appears to relate solely to a co-defendant in this case. |
| 76. Defendant Air & Liquid Systems Corporation's Answer to Plaintiffs' Complaint for Damages asserts defenses covering: (1) government contractor affirmative defense; (2) sophisticated user/intermediary affirmative defenses; and (3) superseding cause affirmative defenses.<br><br>***Supporting Evidence:***<br>*Ex.***. 6**, Defendant Air & Liquid Systems Corporation's Answer to Plaintiffs Complaint for Damages. | 76. Westinghouse lacks personal knowledge of the facts that would be needed to either admit or dispute SUF #71, which appears to relate solely to a co-defendant in this case. |
| 77. Defendant General Electric's Answer to Plaintiffs' Complaint for Damages asserts defenses covering: (1) government contractor affirmative defense; (2) sophisticated user/intermediary affirmative defenses; and (3) superseding cause affirmative defenses. | 77. Undisputed. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| ***Supporting Evidence:*** *Ex.*. **7**, Defendant General Electric's Answer to Plaintiffs Complaint for Damages. | |
| 78. Defendant RedCo's Answer to Plaintiffs' Complaint for Damages asserts defenses covering: (1) government contractor affirmative defense; (2) sophisticated user/intermediary affirmative defenses; and (3) superseding cause affirmative defenses. ***Supporting Evidence:*** *Ex.*. **8**, Defendant RedCo's Answer to Plaintiffs Complaint for Damages. | 78. Undisputed. |
| 79. Defendant Tate Andale, LLC's Answer to Plaintiffs' Complaint for Damages asserts defenses covering: (1) government contractor affirmative defense; (2) sophisticated user/intermediary affirmative defenses; and (3) superseding cause affirmative defenses. ***Supporting Evidence:*** *Ex.*. **9**, Defendant Tate Andale's Answer to Plaintiffs Complaint for Damages. | 79. Undisputed. |
| 80. Defendant Paramount Global's Answer to Plaintiffs' Complaint for Damages asserts defenses covering: (1) government contractor affirmative defense; (2) sophisticated user/intermediary affirmative defenses; and (3) superseding cause affirmative defenses. ***Supporting Evidence:*** *Ex.*. **10**, Defendant Paramount | 80. Undisputed. |

29

| MOVING PARTY'S UNCONTROVERTED MATERIAL FACTS AND SUPPORTING EVIDENCE | WESTINGHOUSE'S RESPONSE TO CITED FACTS AND SUPPORTING EVIDENCE |
|---|---|
| Global's Answer to Plaintiffs Complaint for Damages. | |
| 81. Defendant Warren Pumps' Answer to Plaintiffs' Complaint for Damages asserts defenses covering: (1) government contractor affirmative defense; (2) sophisticated user/intermediary affirmative defenses; and (3) superseding cause affirmative defenses.<br><br>***Supporting Evidence:***<br>**Ex. 11**, Defendant Warren Pumps' Answer to Plaintiffs Complaint for Damages. | 81. Undisputed. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

## WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS

Pursuant to Central District Local Rule 56-1 and this Court's Civil Standing Order, Westinghouse, hereby respectfully submits the following Additional Uncontroverted Material facts.

| WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS | SUPPPORTING EVIDENCE |
|---|---|
| 82. The Navy's extensive control over the design, manufacture and supply of Westinghouse's Navy propulsion equipment extended to the warnings to be supplied therewith, with the Navy: imposing detailed Navy specifications ("MilSpecs") that controlled the format and content of such warnings; carefully reviewing all equipment-related warnings to ensure MilSpec compliance; and approving the warnings as drafted by Westinghouse despite a lack of asbestos-related warnings and despite the Navy's independent knowledge of asbestos hazards. | 82. Padgett Aff., ¶¶ 20. 67–68. 78 attached as **Exhibit J** to the Cronin Decl.; Moore Depo. Moore Depo. at 104:12–105:2, 145:7–14, attached as **Exhibit K** to the Cronin Decl. |
| 83. Westinghouse could not provide any warning of any type with its Navy propulsion equipment outside the scope of this Navy review and approval process. | 83. Padgett Aff., ¶ 79, attached as **Exhibit J** to the Cronin Decl.; and Moore Depo. at 145:15–146:14, 148:21–149:8, 199:1–6, attached as **Exhibit K** to the Cronin Decl.. |
| 84. The Navy exercised exclusive and complete autonomy over its shipyards, over its shipyard personnel, and over the safety practices, if any, to be followed in its shipyards or aboard its ships | 84. Padgett Aff., ¶¶ 31, 59, 67, attached as **Exhibit J** to the Cronin Decl.; Moore Depo. at 154:15–155:15, 155:23–156:6, attached as **Exhibit K** to the Cronin Decl. |
| 85. Westinghouse had no independent authority to dictate or control the work practices of Navy sailors or of Navy shipyard personnel | 85. Padgett Aff., ¶ 79, attached as **Exhibit J** to the Cronin Decl. |

31

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 86. While the Navy's MilSpecs and related rules generally called for warnings of "special hazards" associated with Navy equipment, these rules did not define what constituted a "special hazard" nor did they specifically require asbestos warnings. | 86. Padgett Aff., ¶¶ 76–78, attached as **Exhibit J** to the Cronin Decl.; and Moore Depo. at 103:23–104:11;, 110:19–111:1, 148:15–22, attached as **Exhibit K** to the Cronin Decl. |
| 87. On the only known occasion when the Navy specifically considered the question, it determined that an asbestos warning was ***not*** called for by its MilSpecs and related rules and regulations | 87. Padgett Aff., ¶ 76, attached as **Exhibit J** to the Cronin Decl.; Forman Report, ¶ 86, attached as **Exhibit L** to the Cronin Decl.; Moore Depo. at 107:14–108:9, attached as **Exhibit K** to the Cronin Decl. |
| 88. The Navy had extensive knowledge of health hazards associated with excessive asbestos exposure dating back to the 1920s and had, by the 1940s become a "leader in the field" of asbestos safety, adopting measures to prevent its personnel from incurring asbestos-related injuries as early as 1941. | 88. Forman Report, ¶¶ 27–28 and 32, attached as **Exhibit L** to the Cronin Decl. |
| 89. In particular, by the 1960s, the Navy had implemented a comprehensive, state-of-the-art, safety program related to the handling of asbestos-containing insulation in Navy shipyards. | 89. Moore Depo. at 41:8–14, 45:3–10, 46:19–47:7. 54:1–12, attached as **Exhibit K** to the Cronin Decl. |
| 90. There is no evidence that Westinghouse knew a single asbestos hazard-related fact that was not also known to the Navy as of the period of Mr. Hultner's Navy service. | 90. Moore Depo. at 146:21–147:3, attached as **Exhibit K** to the Cronin Decl.; Depo. of Candace Su-Jung Tsai, CIH, taken on March 12, 2025 in the matter of *Skuidn v. Air & Liquid Systems Corp., et al.* (D. Haw. Case No. CV-2200425 SASR-RT) ("Tsai Depo.") at 75:18–25, attached as |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| | **Exhibit M** to the Cronin Decl. |
| 91. The Navy, beginning in the 1940s and continuing through the period of Mr. Hultner's alleged exposure, broadly publicized both the fact of its knowledge of asbestos hazards and the fact of its implementation of various measures designed to ensure that any asbestos exposures on the part of Navy personnel remained below the then-applicable Threshold Limit Value ("TLV") – *i.e.*, that level of exposure below which there was believed to be no appreciable risk of harm. | 91. Forman Report, ¶ 32, attached as **Exhibit L** to the Cronin Decl. |
| 92. Particularly as many of the safety measures included in the Navy's well-publicized asbestos safety program had become legal requirements for all employers by the time of Mr. Hultner's Navy service, it was reasonable for third parties to expect the Navy to rigorously enforce that program, protecting its own personnel from hazardous levels of asbestos exposure. | 92. Moore Depo. at 54:14–21, attached as **Exhibit K** to the Cronin Decl.; Tsai Depo. at 42:10–15, attached as **Exhibit M** to the Cronin Decl. |
| 93. Through at least the 1970s, the Navy leaned on its own analysis of the proper means of addressing asbestos hazards, regularly rejecting offers of assistance in this regard from third parties, as exemplified by the Navy's rejection of a Bureau of Labor Standards offer to inspect Navy shipyards in 1941 – a rejection based in part on the Navy's awareness that it was not fully implementing its asbestos safety program and its fear that drawing further attention to possible asbestos hazards might cause labor unrest, upsetting the war effort. | 93. Forman Report, ¶¶ 49, 51–54, 58–59, 156, attached as **Exhibit L** to the Cronin Decl. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 94. Westinghouse assisted the Navy and the United States Atomic Energy Commission in the management of a nuclear propulsion laboratory and training station known as the Naval Reactors Facility ("NRF"). | 94. Deposition of Leo Romer, taken on July 21, 1993 in the matter of *Tuck v. Owens-Corning Fiberglass Corp., et al.* (Bannock County Civil Action No. 41528-C, Case No. 3695) ("Romer Depo.") at 47:18–48:14, 108:18–110:3, attached as **Exhibit N** to the Cronin Decl. |
| 95. Westinghouse and the Navy jointly enforced various aspects of the Navy's asbestos safety program at the NRF beginning in the late 1950s, including: segregating the dustiest uses of asbestos insulation to the facility's insulation shops rather than performing such work "shipboard" (*i.e.*, in the facility's propulsion plant prototypes); attempting to limit access to the insulation shops to essential personnel; and using drop cloths and vacuum cleaners to dispose of any dust or debris created by asbestos insulation work that had to be performed in the prototypes. | 95. Romer Depo. at 129:11–130:17, 198:20–199:5, 199:17–23, attached as **Exhibit N** to the Cronin Decl. |
| 96. The dust monitoring jointly performed at the NRF by the Navy and Westinghouse recorded asbestos dust concentrations below the then-existing TLV and, thus, below a level then believed needed to pose a risk of harm. | 96. Romer Depo. at 60:24–61:6, 62:11–63:5, 68:24–69:3, attached as **Exhibit N** to the Cronin Decl. |
| 97. No maintenance or repair work of any kind was performed on any of the *Juneau*'s pump-drive turbines in Mr. Hultner's presence. | 97. Hultner Depo., Vol. 2 at 148:15–18, 149:17–19, attached as **Exhibit A** to the Cronin Decl. |
| 98. Mr. Hultner was never exposed to any dust, asbestos-containing or otherwise, associated with Westinghouse reactor equipment | 98. Hultner Depo., Vol. 2 at 217:11–218:2 and 222:5–16, attached as **Exhibit A** to the Cronin Decl.; Armbrister Depo. Vol. 1 at 65:1– |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| installed within the *John Adams*' reactor compartment as he never participated in any hands-on maintenance or repair work of that equipment; as no work performed in his presence would have entailed the disturbance of any asbestos-containing materials; and as Mr. Hultner wore protective clothing or gear including a full-face, air-fed, respirator and hood that prevented his exposure to otherwise respirable dust of any type whenever he was inside the reactor compartment. | 21, 65:22–66:25, and 68:2–68:14, attached as **Exhibit H** to the Cronin Decl. |
| 99. While Mr. Hultner was allegedly exposed to dust from packing and/or gasket-related work performed on a "Westinghouse" compressor associated with the *John Adams*' $CO_2$ scrubber system, that compressor was manufactured and supplied by the Westinghouse Air Brake Company ("WABCO"), a corporate entity separate and apart from the Westinghouse Electric Corporation, for whose products and activities Paramount Global has no vicarious liability as a successor or otherwise. | 99. Hultner Depo., Vol. 2 at 214:11–215:1, 215:16–20, attached as **Exhibit A** to the Cronin Decl.; NAVHIPS 0904–003401010, Preliminary Index of Technical Publications, *USS John Adams* – SSB(N) 620, pp. 1-3 through 1-4, attached as **Exhibit E** to the Cronin Decl.; Sweeney Aff., ¶ 3, attached as **Exhibit F** to the Cronin Decl.; WABCO Interrogatory Responses, pp. 1–2, attached as **Exhibit G** to the Cronin Decl. |
| 100. Through and including the period of Mr. Hultner's Navy service, neither the Navy, Westinghouse, nor anyone else had reason to believe that the shipboard use of asbestos-containing gaskets and packing materials posed a health hazard to Navy personnel as, at that time, even the world's most preeminent researchers in the field of asbestos-related disease believed, and published their conclusions, that the relatively *de minimis* amount of asbestos dust created by the | 100. Forman Decl., ¶¶ 43, 76, 117–19, 122–23, 127, attached as **Exhibit L** to the Cronin Decl. |

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT

| WESTINGHOUSE'S ADDITIONAL MATERIAL FACTS | SUPPPORTING EVIDENCE |
|---|---|
| shipboard use of such products was completely non-hazardous. | |

Dated:  April 11. 2025                    JAMISON EMPTING CRONIN. LLP

                                  By:   _/s/ Justin F. Cronin_
                                       JUSTIN F. CRONIN
                                       Attorneys for Defendant
                                       Paramount Global, f/k/a ViacomCBS
                                       Inc., f/k/a CBS Corporation, a Delaware
                                       corporation, f/k/a Viacom Inc., successor
                                       by merger to CBS Corporation, a
                                       Pennsylvania corporation, f/k/a
                                       Westinghouse Electric Corporation

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL
FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY
JUDGMENT

# CERTIFICATE OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action.  My business address is 825 East Fourth Street, Suite 204, Los Angeles, CA 90013.

On April 11, 2025, I served the following document(s): **DEFENDANT PARAMOUNT GLOBAL'S RESPONSE IN OPPOSITION TO PLAINTIFFS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS**   on the interested parties in this action by placing a true and correct copy of such document, enclosed in a sealed envelope, addressed as follows:

| | |
|---|---|
| FROST LAW FIRM, PC<br>273 West 7th Street,<br>San Pedro, CA 90731<br>T: 866-353-6373<br>F 310-361-8803 | THE LAW OFFICES OF WORTHINGTON & CARON, PC<br>273 West 7th Street<br>San Pedro, California 90731<br>T 310-221-8090<br>F 310-221-8095 |

*Attorney for Plaintiffs*

And All Parties Registered to receive electronic notification on this matter

☐   I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at, Los Angeles, California.

☒   By E-Service: I electronically served the above document(s) via PACER CM/ECF and/or File & ServeXpress on the recipients as registered and designated to receive electronic notification.

☐   By Personal Service:  I caused to be delivered by courier **Nationwide Legal Express,** such envelope by hand to the offices of the above addressee(s).

Executed:  April 11, 2025

☐   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*James Choi*
_____
James Choi

37

DEFENDANT PARAMOUNT GLOBAL'S RESPONSE AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO PLAINTFFS' OMNIBUS MOTION FOR PARTIAL SUMMARY JUDGMENT